# United States Court of Appeals
## For the First Circuit

No. 09-1216

UNITED STATES OF AMERICA,

Appellee,

v.

MANUEL CARDOSA,

Defendant, Appellant.

_____

No. 09-1231

UNITED STATES OF AMERICA,

Appellee,

v.

EDWIN RODRIGUEZ,

Defendant, Appellant.

_____

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]
[Hon. Michael A. Ponsor,  U.S. District Judge]

_____

Before

Lynch, Chief Judge,
Boudin and Howard, Circuit Judges.

_____

Judith H. Mizner, Assistant Federal Public Defender, Federal
Defender Office, for appellant Edwin Rodriguez.
Edwin Rodriguez on brief pro se.
Victoria M. Bonilla-Argudo, by appointment of the court, for
appellant Manuel Cardosa.

Manuel Cardosa on brief pro se.

Kelly Begg Lawrence, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief for appellee.

May 28, 2010

**BOUDIN**, <u>Circuit Judge</u>. This decision addresses a single (and recurring) problem that arises in the two appeals before us--those of Edwin Rodriguez and Manuel Cardosa--which were argued together before the same panel and present variations on the theme. The problem arises where a defendant who is found guilty of (or pleads guilty to) a crack cocaine offense is classified at sentencing as a career offender, the judge then gives a sentence that varies or departs from the career offender guideline, and the defendant later seeks resentencing on the ground that the crack cocaine guidelines were thereafter lowered with retroactive effect.[1]

This adjustment to the crack cocaine guidelines occurred in 2007, after both of the convictions in this case, and it provides the pivot on which both cases turn. Responding to concerns about the disparity between the then-existing sentences prescribed for dealing in cocaine powder and the far more severe ones for equivalent amounts of crack cocaine, the U.S. Sentencing Commission amended the guidelines for the latter to lower the penalties for such violations and designated this change to have retroactive effect. This does not by itself lower an existing

---

[1]The relevant amendments are Amendment 706, which in 2007 reduced the base offense level associated with each quantity of crack cocaine by two levels, U.S.S.G. app. C, amend. 706 (Supp. Nov. 1, 2009), and Amendment 713, which made this retroactive, <u>id.</u>, amend. 713. For convenience, we refer to these modifications as having altered the "crack cocaine guidelines."

-3-

sentence; rather, it allows a district court in its discretion to revisit and revise a sentence previously imposed if the sentence was "based on" the crack cocaine guidelines.  See 18 U.S.C. § 3582(c)(2) (2006).

The facts in the two cases before us are uncomplicated. In 2001, Edwin Rodriguez pled guilty to crack cocaine charges of conspiracy, distribution, and possession with intent to distribute (as well as to charges that he escaped from custody).  Applying the crack cocaine guidelines in force at the time, U.S.S.G. § 2D1.1 (2001), Rodriguez was initially classified as having an offense level of 31 and a criminal history category of V; however, because he had two prior predicate drug offenses, Rodriguez was classified as a career offender, id. § 4B1.1, which resulted in an offense level of 34 and a criminal history category of VI.[2]

At sentencing, the district court said that this designation overstated the seriousness of Rodriguez' past acts, that Rodriguez had suffered from difficult family circumstances and that he had a "serious emotional disability."  Based on these factors, the district judge departed downward to an offense level of 31 and a criminal history category of V.  These were the offense

---

[2]The base offense level was initially 32 under the crack cocaine guidelines, but the district court applied a two-level enhancement for obstruction of justice and a three-level reduction for acceptance of responsibility.  The base offense level was initially 37 under the career offender guideline, but the three-level reduction for acceptance of responsibility again applied.

-4-

level and criminal history category that would have applied to an ordinary crack cocaine case with comparable quantities, and the 180-month sentence imposed was around the middle of the resulting range.

In 2008, while serving this sentence, Rodriguez filed a motion to reduce this sentence based on the level-lowering amendment to the crack cocaine guidelines already described. See note 1, above. The district court rejected Rodriguez' motion. It said that "[t]he fact that defendant was sentenced as a career offender makes him ineligible for a sentence reduction" and relied on this court's decision in United States v. Caraballo, 552 F.3d 6 (1st Cir. 2008), cert. denied, 129 S. Ct. 1929 (2009).[3] Rodriguez appealed from the refusal to consider resentencing.

Cardosa's history is slightly different. In 2005, he pled guilty to charges of possession with intent to distribute cocaine base and was acquitted on firearms charges that went to trial. At sentencing, based on prior predicate convictions, he was classified as a career offender. The district judge chose to apply the 2001 version of the guidelines when sentencing Cardosa. Under those crack cocaine guidelines, his criminal history category would

---

[3]In Caraballo, the career offender guideline was used as the basis for calculating the sentencing range, with a variance granted based on the defendant's medical condition, and this court held that resentencing was precluded because the sentence was based on the career offender guideline, not on the crack cocaine guidelines that were subsequently lowered by the 2007 amendment. 552 F.3d at 11.

have been VI and his adjusted offense level would have been 21, while under the career offender guideline, his adjusted offense level increased to 29, though his criminal history category remained VI.[4]

At sentencing, the district judge said that the career offender classification overstated Cardosa's criminal history and that the court would "depart downward in this matter under the guidelines to the offense level computation without the career offender status." The district judge departed downward to an offense level of 21, which resulted in a 77- to 96-month sentencing range, the same range as would have applied had Cardosa never been classified as a career offender. The judge imposed a 96-month sentence, at the top end of the range.

In 2008, Cardosa filed a motion to reduce his sentence based on the amendment to the crack cocaine guidelines; the district court denied the motion, relying on Caraballo. Cardosa's appeal followed. On his appeal, as on that of Rodriguez, the sole issue is whether the district court had authority to consider resentencing, an issue primarily (but not entirely) turning on the interpretation of the governing statute.

---

[4]The base offense level was 24 under the crack cocaine guidelines and 32 under the career offender guideline, but in both cases the district court applied a three-level reduction for acceptance of responsibility.

With limited exceptions, a sentence cannot be modified once imposed, United States v. Jordan, 162 F.3d 1, 2-3 (1st Cir. 1998), cert. denied, 526 U.S. 1105 (1999), but one exception established by statute is that post-sentence amendments to the guidelines permit a district court to consider resentencing under the following circumstances:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). As noted above, the amendment that modified the crack cocaine guidelines here was designated as one that could be applied to those sentenced before its adoption, and so Rodriguez and Cardosa claim they can benefit from it.

If a defendant not designated a career offender is sentenced under the crack cocaine guidelines before the guideline reduction, he may seek resentencing; if sentenced as a career offender for the same offense, he may not as his sentence was not based on the crack cocaine guidelines. United States v. Ayala-Pizarro, 551 F.3d 84, 85 (1st Cir. 2008). What happens when a defendant is classified as a career offender, but the judge deviates from the career offender guideline and instead relies on

a different guideline, is not straightforward, and the other courts of appeals to have considered this question are divided.[5]

In the two cases before us, the district judges thought our decision in Caraballo resolved this last issue and foreclosed consideration of the resentencing motions. Construing our own prior decision in that case, and construing the statute and Sentencing Commission amendments at issue there and in this case, present purely legal issues that we review de novo. Caraballo, 552 F.3d at 8-9. Our language in Caraballo may have misled the district judges, but the circumstances there were different and that decision--which continues to be good law--does not resolve the appeals before us.

In Caraballo (see note 3, above), the district court found that the defendant was a career offender, treated the career offender guideline as the framework for the sentence, but then made an adjustment in the defendant's favor that cast no doubt on his career offender designation but reflected an existing medical condition (primarily the deterioration of his hips). See 552 F.3d at 11; United States v. Caraballo, 447 F.3d 26, 26-27 (1st Cir.

_____

[5]Compare United States v. Munn, 595 F.3d 183, 194-95 (4th Cir. 2010) (allowing resentencing), United States v. McGee, 553 F.3d 225, 227-28 (2d Cir. 2009) (per curiam) (same), United States v. Wesson, 583 F.3d 728, 732 (9th Cir. 2009), cert. denied, 2010 WL 373803 (2010) (dicta), and United States v. Moore, 541 F.3d 1323, 1329-30 (11th Cir. 2008), cert. denied, 129 S. Ct. 1601 (2009) (dicta), with United States v. Darton, 595 F.3d 1191, 1195-97 (10th Cir. 2010) (not allowing resentencing), and United States v. Tolliver, 570 F.3d 1062, 1066-67 (8th Cir. 2009) (same).

2006) (per curiam), cert. denied, 549 U.S. 928 (2006). Under these circumstances, we held that the sentence was "based on" the sentencing range prescribed for career offenders--not the range prescribed for crack cocaine offenses, which had never been invoked--so that the amendment lowering crack cocaine sentences could not be used as a basis for resentencing. Caraballo, 552 F.3d at 11.

This does not answer the question whether Cardosa's and Rodriguez' sentences were "based on" the crack cocaine guidelines. As a matter of words, one could say that a sentence was based on the career offender guideline even if the judge, having found the defendant to be a career offender, then chose to sentence the defendant relying only upon the crack cocaine guidelines. But in ordinary usage one would say that such a defendant had been sentenced "based on" the crack cocaine guidelines and, if those guidelines were later lowered by the Commission with retroactive effect, then the defendant is eligible for resentencing.

Policy confirms this more natural reading. By statute, the Commission may conclude that a guideline should be changed and that it is just or suitable to allow a defendant sentenced under the old guideline to request resentencing. 18 U.S.C. § 3582(c)(2); 28 U.S.C. § 994(o) (2006). Here, the old crack cocaine guidelines were amended because the Commission concluded that the disparity with powder cocaine, and an overstatement of the inherent dangers

posed by crack, had produced an overly severe sentencing range for crack. See U.S.S.G. app. C, amend. 706, Reason for Amendment; Kimbrough v. United States, 552 U.S. 85, 94-100 (2007). Having reduced the offense levels associated with the various quantities, the Commission unsurprisingly also decided to allow resentencing for defendants serving prison terms calculated under the old crack cocaine guidelines.

The government says that such a defendant, if he had initially been designated a career offender before the court departed, could still be deemed one whose sentence was "based on" the career offender guideline because that guideline was an initial step: without it, the judge could hardly have had a guideline sentencing range from which to depart. But the government fails to explain why it would make sense to so read "based on," given that it is both a less natural reading and is inconsistent with the policy rationale for both the statute and amendments in this case.

The government next says that no new sentencing range is established where a departure is ordered and so the statutory precondition to resentencing, namely, that the defendant have been originally sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," 18 U.S.C. § 3582(c)(2), is absent. The government's argument works in a case like Caraballo where the adjustment of the career offender sentence was based on a health problem and where there was no reliance on

-10-

the crack cocaine guidelines. 552 F.3d at 8, 11. In such a case, the sentence was not based on a guideline thereafter lowered.

But such cases are not all of one size or shape. Where the judge in the original sentencing decides to depart from the career offender guideline to some other guideline with its own sentencing range, it is perfectly fair to say that the sentence imposed is "based on" that adopted range and not the career offender guideline range. And, where the guidelines chosen to drive the sentence in lieu of the career offender guideline were the crack cocaine guidelines, and those guidelines were later reduced by the Commission with retroactive effect, the statutory predicate to permit resentencing is satisfied.

Finally, the government seems to argue--based on supposed usages in various statutes, guideline provisions and cases--that in relation to eligibility for resentencing, any reference to a "guideline range" or "sentencing range" is to a range that existed before any departure is taken.[6] That meaning is sometimes employed and makes good sense where no other guideline range is adopted as the final framework, but little sense where the departure is to a new guideline: for then there is not one range in play but two, and

---

[6]E.g., 18 U.S.C. § 3553(a)(4), (b)(1), (c); U.S.S.G. §§ 1B1.1, 1B1.1 cmt. n.1(E), 1B1.10, 1B1.10(b)(2)(B), 1B1.10 cmt. n.1(A), 1B1.10 cmt. n.3 (2009); United States v. Martin, 520 F.3d 87, 91, 96 (1st Cir. 2008); United States v. Roselli, 366 F.3d 58, 65 (1st Cir. 2004).

-11-

which is the proper referent can hardly be decided by looking at instances where only one range exists.

So we conclude that where the defendant's existing sentence was ultimately <u>determined</u> by the old crack cocaine guidelines rather than by the career offender guideline, resentencing is within the discretion of the district court. A mere reference to the lower sentences provided by the crack cocaine guidelines as a reason for a departure or variance is not enough. Some cases will be easy to classify and some harder; but happily there is a means of solving the problem of the harder, gray area cases. We turn initially to Cardosa, whose case is easy, and then address Rodriguez, whose case might appear a closer call.

At Cardosa's sentencing, the district judge stated not only that the career offender guideline was not "a true reflection of Mr. Cardosa's criminal history" but also that he was "depart[ing] downward in this matter under the guidelines <u>to the offense level computation without the career offender status</u>" (emphasis added). The judge then employed the old crack cocaine guidelines to determine the sentence. Cardosa's sentence was thus plainly "based on" the crack cocaine guidelines, and so the district judge is entitled to consider on remand whether he should be resentenced.

As for Rodriguez, the district court said that the career offender guideline range was "too high" and overstated the

seriousness of his criminal history; but it also noted that--somewhat akin to Caraballo--Rodriguez had difficult family circumstances and suffered from diminished mental capacity. Further, by contrast to Cardosa's case, the district judge never said that he was departing downward to the crack cocaine guidelines range, although the judge did in fact adopt an offense level, criminal history classification and sentence corresponding to that range.

If these facts stood alone, we would probably ourselves say that the sentence was in fact based on the crack cocaine guidelines and not the career offender guideline. But in rejecting Rodriguez' motion for resentencing, the district court said that "[t]he fact that defendant was sentenced as a career offender makes him ineligible for a sentence reduction." This at least muddies the waters, although the judge may well merely have meant that Caraballo controlled and not that the career offender guideline was relied on in setting the sentence.

There is an easy solution for gray area cases, which is to let the district judge--who after all did the original sentencing--decide in the first instance whether it was or was not based on the crack cocaine guidelines. This is hardly an administrative burden since that judge is the one to whom the resentencing petition will be directed in the first instance and eligibility is always a threshold issue. For petitions decided

before today's clarifying of <u>Caraballo</u>, a few remands may be necessary in gray area cases, but rarely in the future.

The judgments in both cases are <u>vacated</u> and the cases <u>remanded</u> for reconsideration in light of this decision. Cardosa is eligible for resentencing; whether to do so is within the discretion of the district judge on remand. In the case of Rodriguez, the district court on remand should determine whether or not he is eligible by deciding whether the original sentence was based on the crack cocaine guidelines and, if the answer is affirmative, then Rodriguez too is eligible for resentencing, but otherwise not.

<u>It is so ordered.</u>