**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-2726

UNITED STATES OF AMERICA

v.

GLENN FLEMMING,
a/k/a Nasir Huggins,
Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-03-cr-00148-001)
District Judge: Honorable Anita B. Brody

Argued January 11, 2010

Before: AMBRO, CHAGARES, <u>Circuit Judges</u> and
JONES,[*] <u>District Court Judge</u>

---

[*]The Honorable John E. Jones, III, United States District
Judge for the Middle District of Pennsylvania, sitting by
designation.

(Opinion filed: July 27, 2010)

Peter A. Levin, Esquire (Argued)
1927 Hamilton Street
Philadelphia, PA   19130-0000

        Counsel for Appellant

Michael L. Levy
   United States Attorney
Robert A. Zauzmer
   Assistant United States Attorney
   Chief of Appeals
Bernadette McKeon (Argued)
   Assistant United States Attorney
Salvatore L. Astolfi, Esquire
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA   19106-0000

        Counsel for Appellee

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

Glenn Flemming was sentenced in February 2005 to 175

months' imprisonment for federal firearm and crack cocaine offenses committed in 2002. After the United States Sentencing Commission retroactively lowered the offense levels for most crack cocaine offenses by two levels, Flemming moved for a reduction of sentence under 18 U.S.C. § 3582(c)(2). The District Court denied his motion, concluding that it lacked authority to reduce Flemming's sentence because he was a career offender under U.S.S.G. § 4B1.1. On appeal, Flemming argues that, despite his status as a career offender, he is eligible for a sentence reduction under § 3582(c)(2) because the District Court granted him a downward departure under U.S.S.G. § 4A1.3 after concluding that the career offender enhancement overstated the seriousness of his criminal history, and instead sentenced him within the Guidelines range for crack cocaine offenses.

The narrow issue presented in this case—whether a career offender who receives a § 4A1.3 downward departure under a pre-2003 edition of the Sentencing Guidelines to the Guidelines range for crack cocaine offenses is eligible for a sentence reduction under § 3852(c)(2)—is one of first impression in our Court, but one that has divided our sister circuit courts. The First and Second Circuits, as well as a divided panel of the Fourth Circuit, have concluded that such a defendant is eligible for a sentence reduction. The Eighth and Tenth Circuits, as well as a divided panel of the Sixth Circuit, have disagreed.

3

Though we do so through a somewhat different analysis, we join the First, Second, and Fourth Circuit Courts in concluding that such a defendant is eligible for a sentence reduction under § 3582(c)(2). Accordingly, we vacate the District Court's order and remand for further proceedings.

## I.    Background

In March 2003, a federal grand jury returned an indictment charging that Flemming possessed with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a) and (b)(1)(C) (Count One); possessed a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Two); and possessed a firearm as a felon, in violation of 18 U.S.C. § 922(g) (Count Three). A jury convicted Flemming on all three counts.

### A.    Sentencing

Using the 2001 edition of the Sentencing Guidelines,[1] the Probation Office determined that under the drug quantity table, U.S.S.G. § 2D1.1(c) (the "Crack Cocaine Guidelines"),

---

[1] Though the Presentence Investigation Report was prepared in September 2004, the United States Probation Office used the 2001 edition of the Sentencing Guidelines—the edition in force when Flemming committed the offenses in this case—to avoid *ex post facto* issues. *See* U.S.S.G. § 1B1.11(b)(1).

Flemming's base offense level was 24 because he possessed more than four but less than five grams of crack cocaine. With a criminal history category of V, Flemming's Guidelines range would have been 92 to 115 months' imprisonment. However, Flemming also qualified as a career offender under U.S.S.G. § 4B1.1[2] (the "Career Offender Guidelines") based on two prior convictions for controlled substance offenses.[3] The career offender enhancement increased Flemming's offense level to 34 and his criminal history category to VI, with a resulting Sentencing Guidelines range of 262 to 327 months' imprisonment. Flemming also faced a mandatory consecutive sentence of 60 months' imprisonment on Count Two. *See* 18 U.S.C. § 924(c)(1)(A)(i).

---

[2] A defendant qualifies as a career offender if: "(1) [he] was at least eighteen years old at the time [he] committed the instant offense of conviction[;] (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense[;] and (3) [he] has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

[3] Flemming has two prior state court convictions (in November 1999 and February 2000) for manufacturing, delivering, or possessing with the intent to manufacture or deliver a controlled substance. Flemming was 18 and 20-years old, respectively, when he committed these offenses, and received a sentence of 12 to 24 months' imprisonment for each. *See* PSR ¶¶ 34, 37.

5

At sentencing, Flemming argued that the career offender enhancement overstated his criminal history, warranting a downward departure pursuant to U.S.S.G. § 4A1.3. Under the 2001 edition of the Sentencing Guidelines, § 4A1.3 in relevant part provided:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.

U.S.S.G. § 4A1.3 (2001). In *United States v. Shoupe*, 35 F.3d 835 (3d Cir. 1994), we held that § 4A1.3 authorized a court to depart both horizontally (in criminal history category) and vertically (in offense level). *Id.* at 839. In the specific context of a defendant subject to the career offender enhancement, we reasoned that "[b]ecause career offender status enhances both a defendant's criminal history category and offense level, . . . a sentencing court may depart in both under the proper circumstances." *Id.* at 838.

Consistent with our interpretation of § 4A1.3 in *Shoupe*, the District Court granted Flemming a downward departure in both offense level and criminal history category. The Court explained:

6

I'm going to start by saying that the guidelines . . . as stated in the pre-sentence report are correct. However, under [§ 4A1.3], I believe that . . . designating Mr. Flemming as a career offender overstates his criminal history and I find this to be true . . . because [of] two things. Number one is because the age at which he committed the offenses . . . that are designated to qualify under the criminal history designation. And also, . . . although the two offenses in state court are not related, there's no question about that, the sentencing judge gave Mr. Flemming 12 to 24 months.

And therefore, I will depart from the criminal history record. That leaves us with . . . an offense level of 24 and a criminal history of five.

Though it did not expressly quantify the extent of its departure, the offense level and criminal history category that the Court was "le[ft] . . . with" were the same offense level and criminal history category that applied under the Crack Cocaine Guidelines without the career offender enhancement (*i.e.*, level 24 and category V). To repeat, the resulting Guidelines range was 92 to 115 months' imprisonment.

Noting that the District Court had "determined that [it

7

was] not going to apply the career offender provisions," the Government recommended a sentence at the top of the Guidelines range. The District Court followed suit and sentenced Flemming to 115 months' imprisonment on Counts One and Three, and a mandatory consecutive sentence of 60 months' imprisonment on Count Two. Flemming's total sentence was thus 175 months' imprisonment.[4]

### B.      Motion for Sentence Reduction

Effective November 1, 2007, the Sentencing Commission issued Amendment 706 to the Guidelines, which lowered the base offense level for offenses involving most quantities of crack cocaine by two levels. U.S.S.G. app. C, amend. 706 (Nov. 1, 2007). In May 2008, the Commission made Amendment 706 retroactive. U.S.S.G. app. C, amend. 713 (Supp. May 1, 2008); U.S.S.G. § 1B1.10(c). On the basis of the Amendment, Flemming filed a *pro se* motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2). The District Court appointed counsel to represent Flemming, and that counsel filed a supplemental brief on Flemming's behalf.

The District Court denied Flemming's motion. It

---

[4] The District Court also imposed a six-year term of supervised release, a $2,500 fine, and a $300 special assessment. In December 2007, we affirmed Flemming's conviction and sentence.

reasoned that, although it had granted Flemming a downward departure under § 4A1.3, it had nonetheless adopted the findings of the Presentence Investigation Report and determined that Flemming qualified as a career offender. Citing our decision in *United States v. Mateo*, 560 F.3d 152 (3d Cir. 2009), the Court held that Flemming was not entitled to a sentence reduction because Amendment 706 did not affect his sentencing range under the Career Offender Guidelines.[5]  Flemming timely appealed.

## II.     Jurisdiction

The District Court had jurisdiction under 18 U.S.C. § 3231.  We have appellate jurisdiction under 28 U.S.C. § 1291.

## III.    Discussion

"[A] judgment of conviction that includes [a term of imprisonment] constitutes a final judgment," 18 U.S.C. § 3582(b), and generally may not be modified by a district court "once it has been imposed," *id.* § 3582(c).  However, there is a limited exception to this general rule of finality:

---

[5] Though the District Court recognized that "this result may not reflect [the Sentencing Commission's] intent in passing Amendment 706," it determined that the conclusion that Flemming was not eligible for a sentence reduction was "compelled by . . . the law of this Circuit."

[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . , upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.* § 3582(c)(2).

We have interpreted this provision as authorizing a district court to reduce a sentence already imposed where two requirements are satisfied: (1) the defendant's initial sentence must have been "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," and (2) the sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*; *United States v. Doe*, 564 F.3d 305, 309 (3d Cir. 2009). If these two requirements are satisfied, a court may then exercise its discretion—"after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(2), as well as the factors contained in the commentary to the Commission's policy statements, U.S.S.G. § 1B1.10 cmt. n.1(B)—to determine whether a reduction in sentence is

10

warranted (as well as the extent of any such reduction).

In this case, the District Court determined that it lacked authority to consider whether a sentence reduction was warranted because Flemming did not satisfy either of the two statutory requirements in § 3582(c)(2). Thus, we are not called on to review the District Court's exercise of its discretion, but to determine whether it was correct that Flemming is statutorily ineligible for a sentence reduction under § 3582(c)(2). We review *de novo* a district court's interpretation of § 3582(c)(2), as well as its interpretation of the Sentencing Guidelines. *See Mateo*, 560 F.3d at 154.

A.     Was Flemming sentenced "based on a sentencing range" that has been lowered by Amendment 706?

Consistent with the District Court's reasoning, the Government contends that our decision in *Mateo* compels the conclusion that Flemming was not sentenced "based on a sentencing range" that was lowered by Amendment 706 because his Guidelines range was calculated under the Career Offender Guidelines in § 4B1.1, rather than the Crack Cocaine Guidelines in § 2D1.1(c). We disagree.

In *Mateo*, we held that a career offender, who received no downward departures and was sentenced *within* the Career Offender Guidelines range, was not eligible for a reduction in

11

sentence even though his base offense level under the Crack Cocaine Guidelines had been subsequently lowered by Amendment 706. 560 F.3d at 155. We rejected the defendant's argument that his sentence was "based on" the Crack Cocaine Guidelines in § 2D1.1(c) simply because "the District Court consulted that section in calculating his offense level." *Id.* In addition, we emphasized the language from § 3582(c)(2) that the sentence imposed must have been "'based on a *sentencing range* that has subsequently been lowered by the Sentencing Commission,'" *id.* (*quoting* 18 U.S.C. § 3582(c)(2)) (emphasis in original), and reasoned that the term "sentencing range" "'clearly contemplates the *end result* of the overall guideline calculus, not the series of tentative results reached at various interim steps in the performance of that calculus.'" *Id.* (*quoting United States v. Caraballo*, 552 F.3d 6, 10 (1st Cir. 2008)) (emphasis added). Thus, "'if an amended guideline does not have the effect of lowering the sentencing range *actually used* at sentencing, the defendant's sentence was not based on that range within the intendment of the statute.'" *Id.* (*quoting Caraballo*, 552 F.3d at 10) (emphasis added).

Far from compelling the conclusion that he is ineligible for a sentence reduction, *Mateo* supports Flemming's argument that his sentence was "based on" the sentencing range calculated under the Crack Cocaine Guidelines. Though the District Court agreed that Flemming technically qualified as a career offender, it declined to sentence him within that range, and instead applied the Crack Cocaine Guidelines range after determining under

12

§ 4A1.3 that the career offender enhancement overstated the seriousness of his criminal history. In other words, the District Court "actually used" the Crack Cocaine Guidelines range, rather than the Career Offender Guidelines range, when it sentenced Flemming.

The First, Second, and Fourth Circuit Courts—as well as numerous district courts, including several in our own Circuit[7]—have reached the same conclusion in nearly identical

---

[7] *See United States v. Poindexter*, 550 F. Supp. 2d 578, 581 (E.D. Pa. 2008) (holding that career offender granted a downward departure under § 4A1.3 and sentenced within the Crack Cocaine Guidelines range was eligible for a sentence reduction: "[I]n the end, [the Crack Cocaine Guidelines] played a far more significant role than Section 4B1.1, the section that the Government argues [the defendant's] sentence was based on."); *see also United States v. Stratton*, No. 99-326, 2009 WL 506365, at *5-6 (E.D. Pa. Feb. 27, 2009); *United States v. Clark*, No. 00-037, 2008 WL 2705215, at *1 (W.D. Pa. July 7, 2008); *United States v. Cornish*, No. 05-337, 2008 U.S. Dist. LEXIS 50577, at *7-8 (D.N.J. June 25, 2008) ("[A]lthough these downward departures were from the § 4B1.1 Guidelines based on the Court's determination that [the defendant's] criminal history was overstated, they resulted in a sentence that was exactly as proposed by the Sentencing Guidelines under § 2D1.1. In effect, the Court did not sentence [the defendant] as a career offender.").

13

circumstances.[8]  In *United States v. McGee*, 553 F.3d 225 (2d Cir. 2009) (*per curiam*), the District Court granted a career offender a downward departure under § 4A1.3, stating that it was departing from the Career Offender Guidelines range "to the level that the defendant would have been in absent the career offender status calculation." *Id.* at 227 (internal quotation marks omitted).  Accordingly, the Court applied the sentencing range calculated under the Crack Cocaine Guidelines and sentenced the defendant within that range.  *Id.*  The Second Circuit concluded that the defendant was eligible for a sentence reduction, as it was "apparent that [the defendant] was sentenced 'based on' a sentencing guideline range that was subsequently lowered by the Sentencing Commission because the district court premised [its] ultimate sentence on the crack cocaine guidelines."  *Id.*  Indeed, because the district court "sentenced [the defendant] based on the crack cocaine guidelines[, it] would likely have considered a different sentence from the one imposed if the applicable crack guidelines had so provided."  *Id.* at 228.  Importantly, the Second Circuit perceived no conflict between the result it reached in *McGee* and the conclusion, consistent with *Mateo*, that "a defendant who is sentenced as a

---

[8] The Eleventh Circuit has also expressed agreement with this conclusion, albeit in a *dictum*.  *See United States v. Moore*, 541 F.3d 1323, 1329–30 (11th Cir. 2008) (agreeing that defendants granted a downward departure under § 4A1.3, and sentenced under the Guidelines range that "would be in effect absent the career offender guideline[s]," would be eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2)).

14

career offender, but does not receive a downward departure, [does not] qualif[y] for a reduced sentence." *Id.* at 227; *see also United States v. Martinez*, 572 F.3d 82, 84 (2d Cir. 2009) (distinguishing the defendant in *McGee*—who "*could have been* sentenced under § 4B1.1 but was *in fact* sentenced under [the Crack Cocaine Guidelines in] § 2D1.1"—from a defendant who is sentenced within the Career Offender Guidelines range and thus ineligible for a sentence reduction based on Amendment 706) (emphases in original).

The First and Fourth Circuit Courts similarly have concluded that a career offender who is granted a downward departure under § 4A1.3 to the Crack Cocaine Guidelines range is eligible for a sentence reduction under § 3582(c)(2). *See United States v. Cardosa*, 606 F.3d 16, 21 (1st Cir. 2010); *United States v. Munn*, 595 F.3d 183 (4th Cir. 2010).[9] And, like

---

[9] The *Munn* Court did not analyze separately the two statutory requirements for a sentence reduction under § 3582(c)(2)—*i.e.*, that (1) the defendant's sentence was "based on" a sentencing range that has been subsequently lowered, and (2) that any sentence reduction be consistent with the Sentencing Commission's policy statements—but rather focused its analysis on the second requirement, which we discuss below in Part III.B. In that regard, the Fourth Circuit appears to have assumed (as at least one other Circuit has) that the two requirements of § 3582(c)(2) are interchangeable. *See Munn*, 595 F.3d at 187 ("Together, § 3582(c)(2) and the Policy Statement make clear that a defendant whose offense of conviction involved crack is

the Second Circuit in *McGee* (and our Court in *Mateo*), these Courts agree that a defendant sentenced *within* the Career Offender Guidelines range would not be eligible for a sentence reduction. *See Cardosa*, 606 F.3d at 19 (*citing United States v. Ayala-Pizarro*, 551 F.3d 84, 85 (1st Cir. 2008)); *Munn*, 595 F.3d at 187 & n.7.

We agree with the reasoning of these Courts. The Government's contention that Flemming's sentence was "based on" the sentencing range calculated under the Career Offender Guidelines cannot be squared with the ordinary meaning of that phrase. *See United States v. Cook*, 594 F.3d 883, 888 (D.C. Cir. 2010) ("Construed in its ordinary sense, the phrase 'based on' refers, for purposes of section 3582(c)(2), to a guideline range that determined the defendant's sentence."); *see also Cardosa*, 606 F.3d at 5. In applying the § 4A1.3 departure, the District Court did not specify the number of offense levels or criminal history categories by which it was departing. Rather, it simply reverted, without further comment, to the base offense level calculated under the Crack Cocaine Guidelines (24) and the criminal history category that applied to Flemming absent the career offender enhancement (V), and imposed a sentence within that range. Indeed, we have little doubt that had

---

eligible for a reduced sentence only if Amendment 706 lowers the defendant's applicable guideline range."); *cf. United States v. Dryden*, 563 F.3d 1168, 1170–71 (10th Cir. 2009) (concluding that the two requirements are "identical" and "convey[] the same meaning").

16

Amendment 706 been in effect when Flemming was sentenced—and, thus, had Flemming's offense level under the Crack Cocaine Guidelines been two levels lower—the District Court would have applied the resulting lower Guidelines range after departing under § 4A1.3.[10]  To ignore these facts and conclude nonetheless that Flemming was sentenced "based on" the Career Offender Guidelines range would put form over substance.  *See McGee*, 553 F.3d at 228 (reasoning that "a defendant who was, even if by virtue of a departure, sentenced 'based on' the crack guidelines [is] eligible for a reduction" under § 3582(c)(2), and noting that "a different reading would lend itself to excessive formalism").

In sum, we conclude that Flemming satisfies the first requirement of § 3582(c)(2), as his sentence was "based on a sentencing range" that has subsequently been lowered by the Sentencing Commission.

B.      Does Amendment 706 have the effect of lowering Flemming's "applicable guideline range"?

What initially appears to be a question with a "seemingly commonsense" answer, *McGee*, 553 F.3d at 229—*i.e.*, whether Flemming's technical status as a career offender, which played

_____

[10] With an offense level of 22 and a criminal history category of V, the advisory sentencing range for Flemming would have been 77 to 96 months' imprisonment (instead of 92 to 115 months).

17

no role in the sentence the District Court ultimately imposed, nonetheless makes him ineligible for a sentence reduction—is made far more complicated by the second requirement of § 3582(c)(2), which provides that any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."[11]  18 U.S.C. § 3582(c)(2); *see also Doe*, 564 F.3d at 310.

The policy statement in § 1B1.10 provides that a sentence reduction based on a retroactive amendment is not consistent with that policy statement if the amendment "does not have the effect of lowering the defendant's *applicable guideline range*."[12] U.S.S.G. § 1B1.10(a)(2)(B) (emphasis added).  Thus, under the policy statement, Flemming is not eligible for a sentence reduction if his "applicable guideline range" is the sentencing range calculated under the Career Offender Guidelines, as that range is not affected by Amendment 706.  However, if Flemming's "applicable guideline range" is the Crack Cocaine

---

[11] As the Supreme Court recently confirmed, the Sentencing Commission's policy statement in § 1B1.10 is binding on courts. *See Dillon v. United States*, 130 S. Ct. 2683 (2010).

[12] We have explained that while the policy statement and the first requirement of § 3582(c)(2) are "complementary," the policy statement is "narrower." *Doe*, 564 F.3d at 310–11 (rejecting the argument that the policy statement in § 1B1.10 "implicitly redefines the § 3582(c)(2) term 'based on'").

18

Guidelines range—which is affected by Amendment 706—he is eligible for a sentence reduction.

The Government contends that the Guidelines specify that all departures, including the departure authorized under § 4A1.3, result in a sentence *outside* the "applicable guideline range." Under the Government's theory, it is irrelevant that the District Court rejected the propriety of the career offender enhancement and sentenced Flemming within the Crack Cocaine Guidelines range, because his "applicable guideline range" for purposes of § 1B1.10 remained the Career Offender Guidelines range.

As we explain below, the Government's view, though plausible, is far from compelled by the Guidelines. Rather, after "seiz[ing] every thing from which aid can be derived" to answer this question, *Chapman v. United States*, 500 U.S. 453, 463 (1991) (internal quotation marks and citation omitted)—*i.e.*, the Guidelines' text, the Sentencing Commission's instructions for applying the Guidelines, and the Commission's applicable Commentary to the Guidelines—we conclude that the edition of the Guidelines used at Flemming's sentencing is ambiguous as to whether the "applicable guideline range" is his pre-§ 4A1.3 departure range (the Career Offender Guidelines range) or his post-§ 4A1.3 departure range (the Crack Cocaine Guidelines range). Under the rule of lenity, we resolve that ambiguity in Flemming's favor.

19

### 1.    The Application Instructions

The Sentencing Guidelines contain no global definition of the phrase "applicable guideline range," which our Court and other circuit courts have treated as a term of art. As a result, we previously have looked to the Application Instructions for the Guidelines contained in U.S.S.G. § 1B1.1 for guidance in determining the point at which a defendant's "applicable guideline range" is determined. Those Instructions (though they do not use the term "applicable guideline range") instruct sentencing courts to apply the various provisions and chapters of the Guidelines "in a specific order." *Doe*, 564 F.3d at 311; *see also United States v. Johnson*, 155 F.3d 682, 684 (3d Cir. 1998) (noting that the Application Instructions provide "a *sequence* of steps for the court to follow in the order in which they appear") (emphasis in original).[13]  The theory is that, by

_____

[13] To be clear, these "steps" are not the same as those we have required district courts to follow in the wake of *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006); *accord United States v. Grier*, 585 F.3d 138, 141–42 (3d Cir. 2009) (*en banc*). Under that procedure, district courts must (1) "continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*"; (2) rule on any departure motions, and determine how any departure "affects the Guidelines calculation"; and (3) impose a sentence after considering the factors in 18 U.S.C. § 3553(a). *Gunter*, 585 F.3d at 247. By contrast, we deal in this case solely with a question of

20

determining the step of the Application Instructions at which a defendant's "applicable guideline range" has been set, we can identify the adjustments that come *after* that point (and thus do not affect the "applicable guideline range").

We relied on the Application Instructions in *United States v. Doe* to determine the "applicable guideline range[s]" for two defendants subject to mandatory minimum sentences of life imprisonment, which exceeded their initial Guidelines ranges of 151–188 and 121–151 months' imprisonment, respectively, calculated under the Crack Cocaine Guidelines. 564 F.3d at 308. The mandatory minimum sentence was not applied to either defendant because each received a downward departure from such a sentence under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 in exchange for their substantial assistance to the Government. *Id.* After departing by several levels, the District Court sentenced Jane Doe to 41 months' imprisonment, and John Doe to 84 months' imprisonment. *Id.*

After Amendment 706 was made retroactive, both defendants filed motions for a reduction of sentence. *Id.* The Does contended that their "applicable guideline ranges" for

Guidelines interpretation (*i.e.*, at what point a defendant's "applicable guideline range" has been set), and whether the Application Instructions provide a clear answer to that question. Moreover, as the Supreme Court has now ruled, *Booker* does not apply in the § 3582(c)(2) context. *See Dillon*, 130 S. Ct. at 2692.

21

purposes of § 1B1.10 were the ranges calculated under the Crack Cocaine Guidelines, as the District Court had relied on those ranges to determine the extent of its departure under § 5K1.1.[14] We rejected their argument, concluding that the Does' "applicable guideline range[s]" were the mandatory minimum sentences, rather than their "initial" Guidelines ranges under the Crack Cocaine Guidelines. *Id.* at 311.

In so holding, we looked to the Application Instructions in § 1B1.1, which culminate in the following four steps:

> (f) Determine the defendant's criminal history category as specified in Part A of Chapter Four. Determine from Part B of Chapter Four any other applicable adjustments.

> (g) Determine the guideline range in Part A of

---

[14] As Judge Fuentes noted in his concurring opinion in *Doe*, our precedent "allows a district court to consider the seriousness of a defendant's offense—often reflected in the § 5A Guidelines range [*i.e.*, the range calculated under the Crack Cocaine Guidelines]—in determining the extent of a substantial assistance departure." 564 F.3d at 315 (Fuentes, J., concurring) (*citing United States v. Casiano*, 113 F.3d 420, 431 (3d Cir. 1997)). However, "[w]e are alone in this approach; all other circuits to have addressed the issue have held that the maximum extent of a substantial assistance departure may be based only on the defendant's substantial assistance." *Id.* at 315 n.1.

Chapter Five that corresponds to the offense level and criminal history category determined above.

(h) For the particular guideline range, determine from parts B through G of Chapter Five the sentencing requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution.

(i) Refer to Parts H and K of Chapter Five, Specific Offender Characteristics and Departures, and to any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence.

U.S.S.G. § 1B1.1(f)–(i).

The Does' "initial" Guidelines ranges were determined at step (g), based on the offense levels assigned them under the Crack Cocaine Guidelines in § 2D1.1(c). However, step (h) instructs a sentencing court to determine "the sentencing requirements" for "the particular guideline range" by consulting "parts B through G of Chapter Five," which include application of a mandatory minimum sentence under § 5G1.1. In turn, § 5G1.1(b) provides that, "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence *shall be the guideline sentence*." U.S.S.G. § 5G1.1(b)

23

(emphasis added). In that context, we concluded that (1) the Application Instructions "specif[y] that applying a mandatory sentence pursuant to § 5G1.1(b) [was] the last step in determining the [Does'] . . . Guideline sentence"; and (2) the Does' "initial" advisory ranges under the Crack Cocaine Guidelines had been essentially "'subsumed and replaced'" at step (h) by the mandatory minimum sentences. *Id.* at 311.

Thus, the implication of our reasoning in *Doe* is that a defendant's "applicable guideline range," for purposes of § 1B1.10, has been set once a court finishes applying step (h), and that any adjustment applied in step (i)—such as a substantial assistance departure under § 5K1.1—has no effect on the "applicable guideline range," even if a court relied on the defendant's "initial" Guidelines range under the Crack Cocaine Guidelines in determining the extent of such a departure.[15]

Though *Doe* did not involve a defendant who received a downward departure under § 4A1.3 to the range calculated

---

[15] Some of our sister circuit courts have reached the same conclusion through a different analysis; *i.e.*, because U.S.S.G. § 5G1.1(b) provides that the mandatory minimum sentence becomes "the guideline *sentence*," a defendant subject to a mandatory minimum sentence is not sentenced "based on a sentencing *range*" that subsequently could be lowered by the Sentencing Commission, 18 U.S.C. § 3582(c)(2) (emphasis added), and thus fails to satisfy the first requirement of § 3582(c)(2). *See Cook*, 594 F.3d at 886–87 (collecting cases).

under the Crack Cocaine Guidelines,[16] our sister circuit courts have similarly relied on the Application Instructions to determine the point at which such a defendant's "applicable guideline range" has been determined. *See United States v. Tolliver*, 570 F.3d 1062, 1065–66 (8th Cir. 2009). In *Tolliver*, the Eighth Circuit Court held that a career offender who was re-sentenced within the Crack Cocaine Guidelines range pursuant to a stipulation between the parties was not eligible for a sentence reduction because Amendment 706 did not have the

---

[16] In his concurring opinion in *Doe*, Judge Fuentes expressed concern that the majority had not distinguished the Does' circumstances from "another category of defendants"—career offenders who received downward departures under § 4A1.3—"whom some courts have ruled eligible for" a sentence reduction. 564 F.3d at 318 (Fuentes, J., concurring) (*citing McGee*, 553 F.3d 225) (emphasis omitted). However, as we explain in greater detail below, there is no conflict between our conclusion in this case and the result in *Doe*, as the Guidelines are not similarly ambiguous as to the "applicable guideline range" for a defendant subject to a mandatory minimum sentence. In that light, we note that the First, Second, and Fourth Circuits, which have concluded that a defendant in Flemming's position is eligible for a sentence reduction, have also concluded (consistent with *Doe*) that a defendant subject to a mandatory minimum sentence is not eligible for a sentence reduction. *See United States v. Roa-Medina*, 607 F.3d 255, 258–61 (1st Cir. 2010); *United States v. Hood*, 556 F.3d 226, 235–36 (4th Cir. 2009); *United States v. Williams*, 551 F.3d 182, 185 (2d Cir. 2009).

25

effect of lowering his "applicable guideline range." 570 F.3d at 1064–65. That stipulation followed the defendant's 28 U.S.C. § 2255 motion, in which he argued that he should have received a sentence within the Crack Cocaine Guidelines range (rather than the Career Offender Guidelines range) "as originally contemplated" by the parties in their plea agreement. *Id.* at 1064. The Government agreed not to oppose the defendant's motion, and stipulated to a sentence within the Crack Cocaine Guidelines range. *Id.*

Citing our decision in *Doe*, the Eighth Circuit Court concluded that (1) a defendant's "applicable guideline range" is determined at step (h) of the Application Instructions, and (2) a court determines whether any departures are warranted at step (i), after the "applicable guideline range" has already been set. *Id.* at 1065–66 (*citing Doe*, 564 F.3d at 311). Apparently concluding that Tolliver's stipulated sentence reduction was equivalent to a "departure" under the Guidelines (and applied at step (i) of the Application Instructions), the Eighth Circuit determined that his "applicable guideline range" remained the Career Offender Guidelines range and was unaffected by the stipulation.[17] *Id.* at 1066–67. The Court suggested that this

_____

[17] In the alternative, the Court held that Tolliver was ineligible for a sentence reduction because he failed to qualify under the first requirement of § 3582(c)(2), *i.e.*, his sentence was "explicitly based on a stipulation between the parties, and not on a sentencing range that had subsequently been lowered by the Sentencing Commission." 570 F.3d at 1067 (internal quotation

26

conclusion would apply equally with respect to career offenders who received § 4A1.3 departures, and expressed disagreement with the Second Circuit's contrary conclusion in *McGee*.[18] *Id.* at 1066.

The Sixth and Tenth Circuit Courts have followed the reasoning in *Tolliver*. *See United States v. Pembrook*, — F.3d —, 2010 WL 2499656, at * 3–4 (6th Cir. June 11, 2010); *United States v. Darton*, 595 F.3d 1191, 1194–95 (10th Cir. 2010). According to these Circuit Courts, all departures provided for in the Guidelines must be applied *after* the "applicable guideline range" has been calculated, thus foreclosing the possibility of a departure *to* the "applicable guideline range." *See Pembrook*, 2010 WL 2499656, at *4; *Darton*, 595 F.3d at 1194.

The Fourth Circuit, however, has concluded that the "plain text" of the Application Instructions compels the opposite conclusion. *Munn*, 595 F.3d at 193–94.[19] As the *Munn* Court

marks, citation, and alteration omitted).

[18] The Eighth Circuit, based on its reasoning in *Tolliver*, has now explicitly held that a career offender who receives a § 4A1.3 downward departure is not eligible for a sentence reduction. *See United States v. Blackmon*, 584 F.3d 1115, 1116–17 (8th Cir. 2009).

[19] Though the Second Circuit did not explicitly discuss the Application Instructions in *McGee*, it nonetheless concluded that the policy statement in § 1B1.10 is ambiguous as to whether a

27

points out, step (i) of the Application Instructions refers only to departures contained in "Part K of Chapter Five," U.S.S.G. § 1B1.1(i), such as a departure for substantial assistance under § 5K1.1. *See Munn*, 595 F.3d at 193 n.11. By contrast, step (f) of the Instructions directs a sentencing court to apply "Part A of Chapter Four"—which part includes the departure authorized under § 4A1.3—before a "guideline range" is even mentioned in the Application Instructions (at step (g)). *See* U.S.S.G. § 1B1.1(g); *Munn*, 595 F.3d at 192–93. Thus, unlike the substantial assistance departure we considered in *Doe*, the Application Instructions appear to direct sentencing courts to apply a § 4A1.3 departure at step (f), two steps *before* a defendant's "applicable guideline range" has been set at step (h).

We agree with the Fourth Circuit that, under one plausible reading of the Application Instructions, sentencing courts are directed to apply § 4A1.3 departures at step (f). Indeed, this seems to flow from common sense. Section 4A1.3 (as construed in *Shoupe*) and the career offender enhancement in § 4B1.1 both may affect a defendant's offense level and criminal history category—and, as we reasoned in *Shoupe*, because the "'jump into the career offender category [is] done

---

reduced sentence is permissible "where the defendant's *pre-departure* sentencing range is found within the crack cocaine guidelines." 553 F.3d at 229 (emphasis in original).

In *Cardosa*, the First Circuit did not explicitly discuss the Application Instructions or the policy statement in § 1B1.10. 606 F.3d 16.

28

in one step,'" permitting a departure in both offense level and criminal history category under § 4A1.3 "is reasonable since the district court [is] only *undoing* the one step." 35 F.3d at 838 (*quoting United States v. Bowser*, 941 F.2d 1019, 1026 (10th Cir. 1991)) (emphasis added). By contrast, a § 5K1.1 substantial assistance departure does not "undo" any Guidelines application decisions. Rather, that departure permits a court to set a sentence outside the "applicable guideline range" based on "a specific factor (the defendant's cooperation) that was not accounted for in the basic guidelines calculation." *Roa-Medina*, 607 F.3d at 259.

Though we believe the Fourth Circuit's reading of the Application Instructions is plausible, we cannot conclude that the Instructions unambiguously compel this conclusion, as it is not entirely clear that step (f) encompasses a downward departure under § 4A1.3. Section 4A1.3 is a policy statement, and step (i) instructs sentencing courts to consider "any other policy statements . . . in the guidelines that might warrant consideration in imposing sentence." U.S.S.G. § 1B1.1(i). Thus, one could interpret the Application Instructions as directing sentencing courts to apply a § 4A1.3 departure at the final step (step (i)), after the "applicable guideline range" has already been calculated. *See Pembrook*, 2010 WL 2499656, at *5; *Munn*, 595 F.3d at 196–97 (Duncan, J., dissenting).

This competing interpretation of § 1B1.1 would be more compelling if step (i) of the Application Instructions

29

encompassed the full universe of "other policy statements" in the Guidelines "that might warrant consideration in imposing sentence." U.S.S.G. § 1B1.1(i). But that is not the case. For example, step (h) of the Instructions specifically directs sentencing courts to apply "parts B through G of Chapter Five" of the Guidelines, which parts include several policy statements. *See* U.S.S.G. § 5B1.3(c), (d), (e); § 5D1.3(c), (d), (e); § 5E1.5; § 5F1.7; § 5G1.3(c). Accordingly, step (i)'s reference to "other policy statements" does not foreclose the possibility that step (f) encompasses the downward departure authorized by the policy statement in § 4A1.3.

In the end, we conclude that the Application Instructions are ambiguous as to the step at which a sentencing court must apply a § 4A1.3 downward departure. The Instructions do not clearly require the departure to be applied *after* the "applicable guideline range" is calculated (as the Sixth, Eighth, and Tenth Circuits have concluded), nor do they clearly require the departure to be applied *before* the "applicable guideline range" is calculated (as the Fourth Circuit has concluded).[20]

---

[20] We acknowledge that step (f) of the Application Instructions—which directs sentencing courts to determine a defendant's "*criminal history category* as specified in Part A of Chapter Four," U.S.S.G. § 1B1.1(f) (emphasis added)—does not expressly include the § 4A1.3 downward departure that Flemming received, which also included a vertical downward departure in offense level. However, the vertical downward departure in offense level in Flemming's case was the product

30

Accordingly, the Application Instructions do not, by themselves, answer whether Flemming's "applicable guideline range" is that

---

of a judicial interpretation of § 4A1.3 that the Sentencing Commission may not have anticipated when it adopted that provision. *Cf. Shoupe*, 35 F.3d at 838 (noting that "[t]he language makes clear that an overstated criminal history triggers departures under § 4A1.3, but does not make clear that such departures are limited to the criminal history category"); *see also United States v. Sash*, 396 F.3d 515, 523 (2d Cir. 2005) (noting that "[a] Guideline may apply in situations not contemplated by the background commentary to the Guideline"). Indeed, that the Commission intended § 4A1.3 to authorize downward departures in criminal history category only is confirmed by the 2003 amendment to § 4A1.3, which, as we discuss in Part III.B.2, overrides our decision in *Shoupe*.

In any event, though the downward departure in both offense level and criminal history category that Flemming received (as a result of *Shoupe*) is not expressly contemplated by the language of step (f), that does not answer whether the Commission nonetheless intended that § 4A1.3 downward departures be applied at that step. *Cf. Munn*, 595 F.3d at 192 ("Because of section 4A1.3's placement . . . , the Commission most likely intended for the court to grant an Overrepresentation Departure *before* determining the applicable guideline range, as part of its calculation of the criminal history category.") (emphasis in original).

The bottom line for us is this: we see nothing in the Application Instructions that compels the conclusion that a § 4A1.3 downward departure must be applied at step (i) (the final step) rather than step (f).

31

set by Crack Cocaine Guidelines or the Career Offender Guidelines.

> 2. The 2003 Amendment to the § 1B1.1 Commentary

Our conclusion in *Doe* that the defendants' "applicable guideline range[s]" were the mandatory minimum sentences was based not only on our reading of the Application Instructions, but also on the Sentencing Commission's commentary to the policy statement in § 1B1.10, which strongly suggests that a sentence reduction is not authorized where a defendant is subject to a mandatory minimum sentence:

> [A] reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with this policy statement if . . . [the retroactive amendment in question] does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (*e.g., a statutory mandatory minimum term of imprisonment*).

*Doe*, 564 F.3d at 312 (*quoting* U.S.S.G. § 1B1.10 cmt. 1(A)) (first omission, alteration, and emphasis in original).

In concluding that a defendant in Flemming's position is not eligible for a sentence reduction, the Sixth, Eighth, and Tenth Circuits relied heavily on a 2003 amendment to the Guidelines, Amendment 651, that appears similarly to suggest that a § 4A1.3 downward departure has no effect on a defendant's "applicable guideline range." In particular, Amendment 651 added, for the first time, an explicit definition of the term "departure" to the Commentary to U.S.S.G. § 1B1.1:

> "Departure" means (i) for purposes other than those specified in subdivision (ii), imposition of a sentence outside the applicable guideline range or of a sentence that is otherwise different from the guideline sentence; and (ii) for purposes of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category), assignment of a criminal history category other than the otherwise applicable criminal history category in order to effect a sentence outside the applicable guideline range.

U.S.S.G. § 1B1.1 cmt. n. 1(E) (2003).

This new definition of "departure" appears to indicate that a § 4A1.3 downward departure is a departure from, rather than to, the "applicable guideline range," as the commentary now states that a § 4A1.3 downward departure is applied "in order to effect a sentence *outside the applicable guideline*

33

*range.*" *Id.* (emphasis added). The Sixth, Eighth, and Tenth Circuits seized on this definition to conclude that a § 4A1.3 departure has no effect on the "applicable guideline range" for a career offender.[21] *See Tolliver*, 570 F.3d at 1066 (citing the

[21] The Sixth Circuit Court in *Pembrook* found further support for its conclusion in the policy statement in § 1B1.10, which includes an exception to the general rule that a defendant's sentence may not be reduced to a term of imprisonment "that is less than the minimum of the amended guideline range," U.S.S.G. § 1B1.10(b)(2)(A), where the "original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing," *id.* § 1B1.10(b)(2)(B). In such a circumstance, "a reduction comparably less than the amended guideline range . . . may be appropriate." *Id.*; *Pembrook*, 2010 WL 2499656, at *3 (reasoning that this provision "specifically refers to the defendant's applicable guideline range as the guideline range that applied before the sentencing court decided to depart . . . downward").

We disagree. Section 1B1.10(b)(2)(B) sheds no light on what a defendant's "applicable guideline range" is in the context of a § 4A1.3 departure; it simply provides that, where that range has been lowered by a retroactive amendment to the Guidelines, "a reduction comparabl[e]" to that which the defendant received at his initial sentencing—*e.g.*, a reduction for substantial assistance under § 5K1.1—may be applied to the amended Guidelines range. *See McGee*, 553 F.3d at 228. Nothing in § 1B1.10(b)(2)(B) forecloses the possibility that a § 4A1.3 downward departure, unlike other kinds of departures, is applied in determining a defendant's "applicable guideline range."

34

definition of "departure" added in 2003 and concluding that the Application Instructions "effectively define all departures to be outside the 'applicable guideline range'"); *see also Pembrook*, 2010 WL 2499656, at *4; *Darton*, 595 F.3d at 1194.

However, we agree with the Fourth Circuit that another Guidelines provision not considered by the Sixth, Eighth, or Tenth Circuits—§ 1B1.11—precludes us from considering the 2003 definition of "departure" in determining Flemming's eligibility for a sentence reduction. Section 1B1.11 provides that

> [t]he Guidelines Manual in effect on a particular date shall be applied in its entirety. The court shall not apply, for example, one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual. *However, if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive change*s.

U.S.S.G. § 1B1.11(b)(2) (emphasis added). Flemming was sentenced under the 2001 edition of the Guidelines. Accordingly, we must consider Amendment 651 if it is a "clarifying" amendment. *Id.* However, if the 2003 definition makes a "substantive change[]" to the Guidelines, we may not

35

consider it. *Id.*; *see also United States v. Marmolejos*, 140 F.3d 488, 491 (3d Cir. 1998) (courts must determine whether an amendment "*clarified* the existing commentary in the Guidelines or *substantively changed* its meaning") (emphases in original).

"Generally, if [an] amended guideline and commentary overrule[] a prior judicial construction of the guidelines, it is substantive; if it confirms our prior reading of the guidelines and does not disturb prior precedent, it is clarifying." *United States v. Diaz*, 245 F.3d 294, 303 (3d Cir. 2001). We recently held that Amendment 651 overrides our holding in *Shoupe* because, as a result of the new definition of "departure," § 4A1.3 now authorizes a departure in criminal history category only.[22] *See Grier*, 585 F.3d at 143. Thus, because the 2003 definition worked a substantive change in the law, *i.e.*, it overruled our interpretation of § 4A1.3 in *Shoupe*, Amendment 651 is a substantive amendment that we may not consider in determining whether Flemming is eligible for a sentence reduction.[23] *Accord*

[22] Thus, had Flemming been sentenced under a post-2003 edition of the Sentencing Guidelines, he could not have received the horizontal and vertical downward departure that the District Court granted him at sentencing; rather, he would have been eligible to receive (at most) a one-level downward departure in criminal history category. *See* U.S.S.G. § 4A1.3(b)(3)(A).

[23] This conclusion holds even if Amendment 651 were intended by the Sentencing Commission to be clarifying. *See, e.g.*, *United States v. Goines*, 357 F.3d 469, 474 (4th Cir. 2004) ("Even if an amendment is designed merely to elucidate the

*Munn*, 595 F.3d at 194 (noting that Amendment 651 "did more than simply clarify the Guidelines: [i]t effected a significant change in the law of this and nearly every other circuit"). Importantly, both the Government and Flemming agreed at oral argument that the 2003 definition of "departure" is a substantive amendment for purposes of U.S.S.G. § 1B1.11.

In that light, we find the Sixth, Eighth, and Tenth Circuit's reasoning unpersuasive. In *Tolliver*, the Eighth Circuit did not explain why it was authorized to consider the 2003 definition of "departure," given that the defendant in that case—like Flemming and the defendants in *Munn*, *McGee*, and *Cardosa*—was sentenced under a pre-2003 edition of the Sentencing Guidelines.[24] *See Munn*, 595 F.3d at 193 n.12. The defendant in the Sixth Circuit's *Pembrook* decision was also

original intent of the Commission, we will regard it as substantive if it conflicts with our precedent."); *see also United States v. Cianscewski*, 894 F.2d 74, 78 n.13 (3d Cir. 1990) ("We do not suggest that the Sentencing Commission, by declaring that substantive changes are intended merely as clarifications, can amend the guidelines retroactively.").

[24] The Tenth Circuit Court also relied on the 2003 definition of "departure" in its *Darton* decision, though it is unclear which edition of the Guidelines was used when the defendant in that case was sentenced. *See* 595 F.3d at 1196 (noting that the defendant pled guilty to possession with intent to distribute crack cocaine in November 2005, but not identifying the edition of the Guidelines used at sentencing).

37

sentenced under a pre-2003 version of the Sentencing Guidelines. *See Pembrook*, 2010 WL 2499656, at *1. But though the Sixth Circuit Court acknowledged the Fourth Circuit Court's conclusion that the 2003 definition of "departure" could not be considered in those circumstances, it (the Sixth Circuit) nonetheless emphasized, without providing any basis for rejecting the *Munn* Court's conclusion, that § 4A1.3 "[i]n its present form" makes clear that a downward departure under that provision is one from the "applicable guideline range."[25] *Id.* at *4–5.

### 3.    The 2001 Version of § 4A1.3

Not only are we precluded from considering the 2003 definition of "departure," the 2001 version of § 4A1.3, which lacked any such definition, appears to differ materially from the 2003 version with respect to what constitutes a defendant's "applicable guideline range" following a departure under that provision. The 2001 version of § 4A1.3 provides in relevant part:

> If reliable information indicates that the criminal
> history category does not adequately reflect the
> seriousness of the defendant's past criminal

---

[25] Moreover, we note that the dissenter in *Munn* expressed no disagreement with the majority's conclusion that U.S.S.G. § 1B1.11 precluded the Court from considering the definition of "departure" added in 2003.

38

conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the *otherwise* applicable guideline range.

U.S.S.G. § 4A1.3 (2001) (emphasis added). The majority in *Pembrook* and the dissenter in *Munn* concluded that § 4A1.3's reference to "imposing a sentence departing from the *otherwise* applicable guideline range" conveys the same meaning as the 2003 definition of "departure," *i.e.*, that a § 4A1.3 departure does not affect a defendant's "applicable guideline range." *Pembrook*, 2010 WL 2499656, at *4; *Munn*, 595 F.3d at 196 (Duncan, J., dissenting).

We disagree. To us, this language facially *supports* the conclusion that a defendant's "applicable guideline range" is set after a downward departure under § 4A1.3. That is, under the plain meaning of the word "otherwise," § 4A1.3 appears to contemplate that a *new* "applicable guideline range" results from a downward departure pursuant to that provision, replacing the "*otherwise* applicable guideline range." *See United States v. Mobley*, 956 F.2d 450, 452 (3d Cir. 1992) ("We construe terms of the Guidelines according to their plain meaning."); *see also Webster's Third New Int'l Dictionary* 1598 (1971) (the definitions of the adverb "otherwise" include "in a different way or manner," "in different circumstances," and "under other conditions"). Were that not the case, the word "otherwise" would be meaningless, as the contrary interpretation equally

39

would make sense if § 4A1.3 provided that a court may depart "from *the* applicable guideline range." *Cf. Acceptance Ins. Co. v. Sloan*, 263 F.3d 278, 283 (3d Cir. 2001) ("[It is an] axiom of statutory construction that whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage." (internal quotation marks and citation omitted)).

This reading of the 2001 version of § 4A1.3 is bolstered when we compare its text to provisions in Chapter Five of the Guidelines. The provisions in Parts H through K of Chapter Five—which courts must consider at the final step of the Application Instructions (step (i))—set forth the circumstances in which a court may impose a sentence "outside" or "below" "*the* applicable guideline range." *See* U.S.S.G. §§ 5H1.1–6, 11–12, 5K2.0, 5K2.12, 5K2.13, 5K2.16, 5K2.20 (2001). By contrast, the 2001 version of § 4A1.3 refers to a departure "from the *otherwise* applicable guideline range," presumably contemplating that the range that results from a § 4A1.3 departure "'subsumes and displaces the *otherwise* applicable guideline range,'" *Doe*, 564 F.3d at 311 (*quoting United States v. Cordero*, 313 F.3d 161, 162 (3d Cir. 2002)) (emphasis added), and thus becomes "*the* applicable guideline range." Applying this reading to Flemming's situation, the Career Offender Guidelines range was his "*otherwise* applicable guideline range," but was replaced by the Crack Cocaine Guidelines range as a result of the § 4A1.3 downward departure.

40

This interpretation has some surface appeal. We note, however, that numerous variations of the term "guideline range," of which "otherwise applicable guideline range" appears to be one, appear in other departure provisions located in Part K of Chapter Five. These variations include "the range established by the applicable guidelines," U.S.S.G. § 5K2.0 (2001), "the authorized guideline range," *id.* §§ 5K2.1–7, "the guideline range," *id.* §§ 5K2.8–10, 5K2.14, and, more simply, "the guidelines," *id.* § 5K1.1. Other provisions in Part K make no reference to a "guideline range" or the "applicable guideline range," instead simply noting the circumstances that might warrant an upward or downward "departure," *id.* §§ 5K2.17–19, or "a reduced sentence," *id.* § 5K2.11. It is undisputed that these departures are all applied at the final step of the Application Instructions and, when applied, result in a sentence outside the "applicable guideline range." However, that these provisions do not employ the term "the applicable guideline range" in describing such a departure may suggest that, though the Guidelines do not use consistent terminology to describe the range from which a sentencing court may depart in the final step, this fact does not necessarily suggest that any particular variation was intended to be dispositive, or even have significance, with regard to a defendant's eligibility for a sentence reduction under § 1B1.10.

In sum, we conclude that the text of the 2001 version of § 4A1.3, like the Application Instructions, fails to answer

41

unambiguously whether Flemming's "applicable guideline range" is his pre- or post-§ 4A1.3 departure range.

### 4.    The Rule of Lenity

The rule of lenity provides that "when ambiguity in a criminal statute cannot be clarified by either its legislative history or inferences drawn from the overall statutory scheme, the ambiguity is resolved in favor of the defendant." *United States v. Pollen*, 978 F.2d 78, 85 (3d Cir. 1992). The rule covers criminal prohibitions as well as penalties, *see Mobley*, 956 F.2d at 452 (*citing Bifulco v. United States*, 447 U.S. 381 (1980)), and applies to the Sentencing Guidelines. *See United States v. Fenton*, 309 F.3d 825, 828 n.3 (3d Cir. 2002) ("[W]here . . . the [Sentencing] Guidelines do not clearly call for enhancement, the rule of lenity should prevent the application of a significantly increased sentence."); *see also United States v. Simpson*, 319 F.3d 81, 87 (2d Cir. 2002) (noting that "the rule of lenity is generally applicable to the Sentencing Guidelines").[26]

---

[26] We note that two members of the Eleventh Circuit Court are of the view that the rule of lenity is inapplicable to the Sentencing Guidelines after *Booker*. *See United States v. Wright*, 607 F.3d 708, 719 (11th Cir. 2010) (Pryor, J., and Fay, J., concurring) (arguing that "the purposes of the rule of lenity suggest that it plays no role in the interpretation of *advisory* guidelines") (emphasis added). Though our Court has not (until today) had occasion to apply the rule of lenity to the Guidelines since *Booker*, we nonetheless have addressed rule-of-lenity

Application of the rule of lenity requires more than a difficult interpretative question. Rather, "[t]o invoke the rule, we must conclude that there is a *grievous* ambiguity or uncertainty in the statute." *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998) (internal quotation marks and citation omitted) (emphasis added); *see also Chapman*, 500 U.S. at 463. As discussed, we believe the Guidelines are "grievous[ly] ambiguous [and] uncertain[]" as to whether Flemming's "applicable guideline range" is his pre- or post-§ 4A1.3 departure range. *Muscarello*, 524 U.S. at 139. Because both interpretations are plausible, we apply the rule of lenity and resolve the ambiguity in Flemming's favor. *See United States v. Oetken*, 241 F.3d 1057, 1060 (8th Cir. 2001) ("Where there are two plausible readings of a guideline provision, we apply the

arguments without suggesting that the rule does not apply to the now-advisory Guidelines. *See, e.g.*, *Doe*, 564 F.3d at 314–15; *United States v. Lennon*, 372 F.3d 535, 539–40 (3d Cir. 2004). In any event, we need not decide in this case whether the rule of lenity is generally applicable to the Sentencing Guidelines post-*Booker* because (1) the Government has raised no such argument, and (2) here we are faced with interpreting provisions of the Guidelines that are *not* advisory. *See Dillon*, 130 S. Ct. at 2694 (holding that *Booker* does not affect the binding nature of the Sentencing Commission's policy statement in § 1B1.10, which "permits a sentence reduction within the narrow bounds established by the Commission"). In that light, we are bound to apply our pre-*Booker* caselaw, which makes clear that the rule of lenity may apply to mandatory provisions of the Sentencing Guidelines. *See, e.g.*, *Fenton*, 309 F.3d at 828 n.3.

43

rule of lenity and give the defendant the benefit of the reading that results in the shorter sentence."); *see also Bifulco v. United States*, 447 U.S. 381, 387 (1980) ("[T]he touchstone of the rule of lenity is statutory ambiguity." (internal quotation marks and citation omitted)). We join the Second Circuit in this regard. *See McGee*, 553 F.3d at 229 (applying the rule of lenity while acknowledging that "U.S.S.G. § 1B1.10 can be read to permit a reduced sentence only where the defendant's *pre-departure* sentencing range is found within the crack cocaine guidelines") (emphasis in original); *see also Pembrook*, 2010 WL 2499656, at *9 (Rogers, J., dissenting) (arguing that application of the rule of lenity is appropriate in these circumstances, as "there is no compelling reason to read the phrase 'applicable guideline range' to exclude the Guideline range that the district court actually applied to [the defendant]").

Though the 2003 definition of "departure" may resolve this ambiguity, Flemming was sentenced under the 2001 edition of the Sentencing Guidelines, and Amendment 651 is a substantive amendment that we may not consider. In any event, the Sentencing Commission's decision in 2003 to add a uniform definition of "departure" to the Guidelines—which includes a definition specific to § 4A1.3—only bolsters our conclusion that, at least prior to 2003, what constituted the "applicable guideline range" for a career offender granted a downward

44

departure under § 4A1.3, and sentenced based on the Crack Cocaine Guidelines range, was, at best, quite unclear.[27]

---

[27] As noted, the Fourth Circuit concluded that the "plain text" of § 1B1.1 *un*ambiguously directs sentencing courts to apply a § 4A1.3 departure at step (f) of the Application Instructions. *Munn*, 595 F.3d at 194. It suggested further that, were it authorized to consider the 2003 definition of "departure," the "Guidelines would be rendered ambiguous on this point, as the Application Instructions indicate that [a § 4A1.3] departure is to be made before calculating the applicable guideline range, while the commentary to those instructions—through its loose usage of the phrase 'applicable guideline range'—arguably suggests otherwise." *Id.* The Court concluded that, "in the face of any such ambiguity, [it] would be *obliged* to apply the rule of lenity and resolve the conflict in the defendant's favor." *Id.* (emphasis in original).

Because the question is not before us, we do not decide whether a career offender granted a § 4A1.3 downward departure under a post-2003 edition of the Sentencing Guidelines would be eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2). However, in light of our conclusion that the Application Instructions *are* ambiguous as to the "applicable guideline range" for a defendant in Flemming's position, we have doubts that the 2003 definition—in a case where it may be considered—results in a "grievous ambiguity" requiring invocation of the rule of lenity. Rather, to the extent the 2003 definition provides clearer guidance as to the "applicable guideline range" for a defendant granted a § 4A1.3 departure, we may be required to treat that guidance as authoritative, as it does not appear to be "inconsistent with, or a plainly erroneous

45

We reach this result aware not only of the general policies behind retroactive amendments to the Sentencing Guidelines, but also the particular policy underlying Amendment 706. *Cf. Moskal v. United States*, 498 U.S. 103, 108 (1990) (noting that courts may consult the *"*motivating policies of the statute*"* in determining whether application of the rule of lenity is warranted (internal quotation marks and citation omitted)). The Sentencing Reform Act of 1984, 98 Stat. 1987, charged the Sentencing Commission with periodically reviewing and revising the Guidelines, and, where warranted, authorized the Commission to reduce retroactively the offense levels for certain crimes. *See* 28 U.S.C. §§ 994(o), 994(u); *see also* 18 U.S.C. § 3582(c). When the Commission first promulgated the Guidelines in 1987, it adopted offense levels for cocaine offenses that "treated every gram of crack cocaine as the equivalent of 100 grams of powder cocaine." *Kimbrough v. United States*, 552 U.S. 85, 96 (2007). The Commission later attempted to alleviate this disparity and, after Congress repeatedly failed to act, *id.* at 99, the Commission adopted Amendment 706 to address what it believed were "urgent and compelling" problems with the 100-to-1 ratio. U.S.S.G. app. C, amend. 706, Reason for Amendment (2007).

There is no dispute that Flemming was burdened by the very crack/powder cocaine disparity that the Sentencing Commission sought to remedy by promulgating Amendment 706

reading of," the Guidelines. *Stinson v. United States*, 508 U.S. 36, 38 (1993).

46

and making it retroactive. As noted, had Amendment 706 been in force when Flemming was sentenced, we have little doubt the District Court would have set a sentence within that range. In these circumstances, we believe that rendering a defendant ineligible for a sentence reduction—simply because he technically qualified as a career offender, and despite a District Court's reasoned judgment that such a classification was inappropriate because it overstated the seriousness of his criminal history (in Flemming's case, because his two predicate offenses resulted in modest prison sentences and were committed when he was 18 and 20-years old)—is antithetical to the policy concerns that motivated Amendment 706. *See Cardosa*, 606 F.3d at 21; *Munn*, 595 F.3d at 195; *McGee*, 553 F.3d at 229–30.

\* \* \* \* \*

Application of the rule of lenity is called for only in rare cases, and thus we stress the narrowness of our holding. We conclude that, under a pre-2003 edition of the Sentencing Guidelines, a career offender who is granted a § 4A1.3 downward departure to the Crack Cocaine Guidelines range is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2). Accordingly, we vacate the District Court's order and remand this case for the Court to exercise its discretion to determine whether, and to what extent, a reduction in Flemming's sentence is warranted.