10-1199
United States v. Rivera

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Submitted: March 18, 2011                          Decided: October 21, 2011)

Docket No. 10-1199-cr
_____

UNITED STATES OF AMERICA,

*Appellee*,

— v.—

GILBERTO RIVERA, a/k/a Junco,

*Defendant-Appellant.*

_____

Before:

KATZMANN, CHIN, *Circuit Judges*, and GLEESON, *District Judge*.[*]

_____

Defendant-appellant Gilberto Rivera appeals from an order of the United States District Court for the District of Connecticut (Ellen B. Burns, *J.*) denying his motion for a sentence modification pursuant to 18 U.S.C § 3582(c)(2) based on the 2007 retroactive amendment to the offense guideline for crack offenses. The order of the District Court is VACATED and the case is REMANDED for further proceedings.

Judge Katzmann concurs in a separate opinion.
_____

Gary D. Weinberger, Assistant Federal Defender (Thomas McCudden, Research and Writing Attorney, *on the brief*), *for* Thomas G. Dennis, Federal Defender, Hartford, CT, *for Defendant-Appellant*.

_____

[*] The Honorable John Gleeson, Judge, United States District Court for the Eastern District of New York, sitting by designation.

Harold H. Chen, Assistant United States Attorney (Sandra S. Glover, Assistant United States Attorney, *on the brief*), for David B. Fein, United States Attorney, District of Connecticut, New Haven, CT, *for Appellee*.

_____

JOHN GLEESON, *District Judge*:

Gilberto Rivera is a crack cocaine offender who was convicted after trial and sentenced in 1996 to a 292-month term of imprisonment. On January 14, 2008, Rivera filed a motion in the United States District Court for the District of Connecticut pursuant to 18 U.S.C. § 3582(c)(2) seeking a reduction of his sentence. Specifically, Rivera sought to benefit from the 2007 decisions by the United States Sentencing Commission (the "Commission") to (a) reduce the sentences for offenses involving crack and (b) make the reductions retroactive. The district court denied the motion on the ground that Rivera was not eligible for a sentence reduction. Rivera filed this appeal, and we now reverse. Rivera was indeed eligible for a reduction, and we remand the case to the district court for a determination of whether he should receive one.

BACKGROUND

A.    *Rivera's Sentence*

1.    *The Calculation of the Guidelines Range*

Rivera's offense involved approximately 3.3 kilograms of crack cocaine. The highest base offense level prescribed by the drug quantity table – Level 38 – applied at the time of his sentencing to all crack offenses involving 1.5 kilograms or more of crack. U.S. Sentencing Guidelines Manual ("U.S.S.G." or the "Guidelines") § 2D1.1(c)(1) (1996). Thus, Rivera's base offense level was 38, to which there were no adjustments. As for criminal history, Rivera's prior convictions earned him sufficient points under U.S.S.G. § 4A1.1 to place him in Criminal History Category ("CHC") IV. The applicable range under the offense guideline was therefore 324–405 months.

2

However, the nature of Rivera's convictions subjected him to treatment as a career offender under § 4B1.1.[1] Career offender status can affect both the offense level and the CHC. With respect to the former, the career offender guideline provides that the applicable offense level is the higher of the one provided by the offense guideline and the one provided by the chart in § 4B1.1(b), which sets forth a schedule of offense levels linked to the statutory maximum sentence for the offense of conviction. Since the highest of the levels on that chart is 37, in Rivera's case the career offender guideline borrowed the offense level of 38 from the offense guideline. As for the CHC, the career offender guideline gives all career offenders a CHC of VI. U.S.S.G. § 4B1.1(b).

Thus, Rivera's career offender status affected his Guidelines range by moving him from Level 38, CHC IV, with a corresponding range of 324–405 months, to Level 38, CHC VI, where the range is 360 months to life.

---

[1]  Insofar as it is relevant here, U.S.S.G. § 4B1.1 provides as follows:

(a)  A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

(b)  . . . [I]f the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI.

| Offense Statutory Maximum | | Offense Level |
|---|---|---|
| (A) | Life | 37 |
| (B) | 25 years or more | 34 |
| (C) | 20 years or more, but less than 25 years | 32 |
| (D) | 15 years or more, but less than 20 years | 29 |
| (E) | 10 years or more, but less than 15 years | 24 |
| (F) | 5 years or more, but less than 10 years | 17 |
| (G) | More than 1 year, but less than 5 years | 12 |

3

2.    *The Sentencing Proceeding*

At the sentencing on September 10, 1996, the district court (Alan H. Nevas, *J.*) departed downward from the applicable range of 360 months to life. The basis for the departure was Rivera's mental health. As the sentencing court noted, the presentence report included a history of head injuries. Rivera had undergone several psychological and neuropsychological assessments to determine his competency in connection with one of his prior prosecutions, and there were strong indications that Rivera suffered from a profound cognitive disability. As a result, the court invoked its power to depart based on Rivera's mental condition, stating as follows: "[T]he court is going to depart downward three levels pursuant to [U.S.S.G. §§] 5H1.3 and 5K2.0.[2] The offense level is 35, the criminal history category is six, and the guideline range from the sentencing table is 292 to 365 months." Having departed downward to that range, the court then imposed a prison sentence equal to its lower end, 292 months.

B.    *The Motion for a Reduction of Sentence*

On January 14, 2008, Rivera filed a motion to reduce his sentence pursuant to the retroactive application of the amended crack guideline. The district court denied the motion and Rivera moved for reconsideration.[3] In an unpublished opinion granting the motion for reconsideration but adhering to the initial ruling, the court held that Rivera had failed to satisfy the threshold requirement for a sentence modification, *i.e.*, that his applicable guideline range had subsequently been lowered by the Commission. Rivera argued that the applicable range was the post-departure range, that is, the range three offense levels below his career offender range.

---

[2]    At the time, § 5K2.0 allowed for a departure based on a circumstance of a kind, or to a degree, not adequately considered by the Commission. *See* U.S.S.G. § 5K2.0 (1996). Section 5H1.3 provided that a defendant's mental condition was "not ordinarily relevant" to the determination of whether to depart, *see* § 5H1.3 (1996), but the provision left room for a departure on that ground in extraordinary cases, *see, e.g.*, *United States v. Barton*, 76 F.3d 499, 502 (2d Cir. 1996).

[3]    The district judge who imposed sentence on Rivera in 1996 had retired. A different district judge (Ellen B. Burns, *J.*) denied Rivera's motion for a reduction of sentence.

4

As discussed further below, the post-departure range had been lowered by the retroactive amendment. The district judge rejected that argument. Relying on, *inter alia*, *United States v. Darton*, 595 F.3d 1191 (10th Cir.), *cert. denied*, 130 S. Ct. 3444 (2010), and *United States v. Tolliver*, 570 F.3d 1062 (8th Cir. 2009), the court held that Rivera's applicable range was the pre-departure career offender range, which had not been lowered. *United States v. Rivera*, No. 94-CR-112 (EBB), 2010 WL 1169767, at *2-3 (D. Conn. Mar. 25, 2010). As a result, the court concluded that Rivera was ineligible for consideration for a sentence modification. *See id.*

On March 31, 2010, Rivera filed a notice of appeal.

## DISCUSSION

A. *The Sentencing Commission's Retroactive Sentence Reductions and the Sentencing Modifications They Authorize*

The Sentencing Reform Act of 1984 ("SRA"), Pub. L. No. 98-473, tit. II, ch. II, 98 Stat. 1987, requires the Commission to periodically review the Guidelines and to revise them as appropriate. *See* 28 U.S.C. § 994(o) (2006). When the Commission amends the Guidelines to lower the sentencing range for a particular offense, it is authorized by the SRA to decide whether and to what extent previously-sentenced offenders may benefit from the change: "If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." § 994(u). As the Supreme Court recently observed, these provisions allow for correction when a particular guideline becomes "a cause of inequality, not a bulwark against it." *Freeman v. United States*, 131 S. Ct. 2685, 2690 (2011) (plurality opinion).

5

The Commission's exercise of this statutory authority triggers an exception to the general rule that sentencing courts are not authorized to modify sentences after they are imposed. Specifically, 18 U.S.C. § 3582(c)(2) provides that

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant . . . or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

One of the critical issues in this case is whether Rivera's sentence was "based on" a subsequently-lowered sentence range within the meaning of § 3582(c)(2).

A retroactive amendment merely authorizes a reduction in sentence; it does not require one. In determining whether to modify a sentence, a judge must consider not only the traditional sentencing factors set forth in 18 U.S.C. § 3553(a), but also the post-sentencing behavior of the defendant and any public safety concerns a reduction in sentence would raise. U.S.S.G. § 1B1.10 cmt. n.1(B). Though a ruling granting or denying an eligible offender's request for a reduction is reviewed for abuse of discretion, *United States v. Borden*, 564 F.3d 100, 104 (2d Cir. 2009), an order declaring an offender ineligible for one is reviewed *de novo*, *see United States v. McGee*, 553 F.3d 225, 226 (2d Cir. 2009).

Section 3582(c)(2) grants courts the authority to reduce sentences only if doing so is consistent with the Commission's applicable policy statements. The relevant policy statement in this regard is U.S.S.G. § 1B1.10, entitled "Reduction in Term of Imprisonment as a Result of Amended Guideline Range," which lists the amendments that the Commission has made retroactive. U.S.S.G. § 1B1.10(c). In 2007, at the same time it made the reduced sentences for crack offenses retroactive, the Commission also amended § 1B1.10 to more fully exercise the

6

authority conferred by 18 U.S.C. § 994(u) to dictate when and by what amount an amendment may reduce previously-imposed sentences. Of importance to Rivera's case are the provisions in § 1B1.10(a) italicized below, which restrict a court's authority to reduce a sentence to cases in which a retroactive amendment has the effect of lowering the defendant's "applicable" guideline range:

> (1) *In General.* – In a case in which a defendant is serving a term of imprisonment, and the *guideline range applicable to that defendant* has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2). As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.
>
> (2) *Exclusions.* – A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if –
>
> . . .
>
> (B) an amendment listed in subsection (c) does not have the effect of lowering *the defendant's applicable guideline range*.

U.S.S.G. § 1B1.10(a) (emphases added). The Commentary to the section reiterates that eligibility for a sentence reduction "under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (c) [of § 1B1.10] that lowers the applicable guideline range." § 1B1.10 cmt. n.1(A).

As for the extent of the permissible reduction in sentence, § 1B1.10(b)(2) provides that "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range . . . ." U.S.S.G. § 1B1.10(b)(2)(A). If the original sentence was lower than the applicable range, the policy statement provides for a commensurate reduction in the amended sentence. § 1B1.10(b)(2)(B) ("If the original term of imprisonment imposed was less than the term of

7

imprisonment provided by the guideline range applicable to the defendant at the time of sentencing, a reduction comparably less than the amended guideline range . . . may be appropriate.").

Finally, despite *United States v. Booker*, 543 U.S. 220 (2005), which rendered the Guidelines merely advisory, the limitations on the degree of a sentence reduction under § 3582(c)(2) are mandatory: "Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon v. United States*, 130 S. Ct. 2683, 2691 (2010).

B.      *Our Precedents*

The legal context in which we decide Rivera's case also includes our own precedents, which establish two important principles. First, if a crack offender who was also a career offender under § 4B1.1 received no downward departure at his initial sentence, he is not eligible for a reduction, at least where "the career offender range . . . remains unaltered by the crack cocaine amendments." *United States v. Martinez*, 572 F.3d 82, 83 (2d Cir. 2009). In those circumstances, the sentence was "based on" the career offender range, which has not been lowered by the Commission, rather than the range produced by the amended crack guideline. *Id.* at 84–85. *Martinez* is in accord with the holdings of our sister circuits.[4]

Second, if the sentencing judge in this case had said he was departing from the career offender guideline in order to base the sentence on the range provided by the offense guideline, *i.e.*, § 2D1.1, Rivera would be eligible for a sentence reduction. *See McGee*, 553 F.3d at 228.

---

[4]      *See United States v. Ayala-Pizarro*, 551 F.3d 84, 85 (1st Cir. 2008); *United States v. Mateo*, 560 F.3d 152, 155 (3d Cir. 2009); *United States v. Anderson*, 591 F.3d 789, 791 (5th Cir. 2009); *United States v. Perdue*, 572 F.3d 288, 292–93 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1537 (2010); *United States v. Forman*, 553 F.3d 585, 589–90 (7th Cir.), *cert. denied*, 129 S Ct. 1924, *and cert. denied*, 129 S. Ct. 2817 (2009); *United States v. Thomas*, 524 F.3d 889, 890 (8th Cir. 2008); *United States v. Wesson*, 583 F.3d 729, 731 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 2071 (2010); *United States v. Sharkey*, 543 F.3d 1236, 1239 (10th Cir. 2008); *United States v. Moore*, 541 F.3d 1323, 1330 (11th Cir. 2008).

The defendant in *McGee* was a career offender, but the sentencing judge determined that the range computed under the career offender guideline overstated the seriousness of McGee's criminal history. She therefore departed under U.S.S.G. § 4A1.3 to the range produced by the offense guideline (92–115 months), and sentenced McGee to a 115-month term of imprisonment. *Id.* at 226. Since the actual sentence was explicitly based on the range produced by the offense guideline, and McGee was thus "disadvantaged by the 100-to-1 sentencing disparity that the crack amendments sought to correct," we construed § 3582(c)(2) and § 1B1.10 in a manner that rendered McGee eligible for a reduction. *Id.* at 230. As discussed further below, unlike *Martinez*, the precise question we decided in *McGee* – is a career offender whose sentencing judge departed under § 4A1.3 from the career offender guideline to a sentence based explicitly on the drug offense guideline eligible for a sentence reduction under § 3582(c)(2)? – has sharply divided the circuits.[5]

C.      *Analysis*

        This case is not controlled by *Martinez*. Though Rivera is a career offender, the sentencing judge departed from the range computed under the career offender guideline. Nor is *McGee* controlling, however, for the sentencing judge did not depart to the range supplied by the offense guideline. Rather, he departed three offense levels from the career offender range based

---

[5]     The First, Third and Fourth Circuits have agreed with our holding in *McGee* that when the sentencing judge departs from a career offender range to the range established by the offense guideline, a modification under § 3582(c)(2) is available if the latter range has been lowered by the retroactive amendment. *See United States v. Flemming*, 617 F.3d 252, 266 n.20 (3d Cir. 2010); *United States v. Cardosa*, 606 F.3d 16, 19–21 (1st Cir. 2010); *United States v. Munn*, 595 F.3d 183, 194–95 (4th Cir. 2010); *see also Wesson*, 583 F.3d at 732 (dicta suggesting that if the appropriate question were presented the Ninth Circuit would follow *McGee*); *Moore*, 541 F.3d at 1329–30 (dicta suggesting same regarding Eleventh Circuit). The Sixth, Eighth and Tenth Circuits have held otherwise, declaring such defendants ineligible for reductions on the ground that their sentences were "based on" the career offender guideline, which has not been amended, despite each sentencing judge having departed from that guideline to the range provided by the offense guideline. *See United States v. Pembrook*, 609 F.3d 381, 384 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1599 (2011); *United States v. Darton*, 595 F.3d 1191, 1194 (10th Cir.), *cert. denied*, 131 S. Ct. 3444 (2010). *Pembrook* and *Darton* both rely on *United States v. Tolliver*, 570 F.3d 1062, 1066 (8th Cir. 2009), in which the sentence the defendant sought to reduce had strayed from the career offender range in unusual circumstances akin to a sentence bargain under Fed. R. Crim. P. 11(c)(1)(C), *see id.* at 1054. *Pembrook*, *Darton* and *Tolliver* are discussed below.

on U.S.S.G. § 5H1.3 because of Rivera's mental condition. The sentencing judge did not mention the offense guideline or the range it produced in Rivera's case, and the sentence imposed was below, not within, the offense guideline range. Thus, the argument that was available to the defendant in *McGee* – that he was sentenced "based on" on a sentencing range calculated pursuant to the since-amended crack guideline – is not available to Rivera.[6]

The government argues that Rivera is ineligible for relief under § 3582(c)(2) because, notwithstanding the downward departure, he was not sentenced "based on" a range that has subsequently been lowered by the Sentencing Commission, as that statute requires. Rather, it contends, he was sentenced "based on" the career offender guideline, which has not been amended. Relatedly, the government contends that Rivera is ineligible under § 1B1.10 because his "applicable" guideline range, which it asserts is the career offender range, has not been lowered by the retroactive amendment at issue, as that guideline requires.

We hold first that these two issues largely overlap. The Sentencing Commission promulgated § 1B1.10 to implement its statutory authority under § 994(u) to determine when and to what extent sentence reductions are retroactive and, once that authority is exercised, to guide sentencing judges who are considering sentence reductions pursuant to § 3582(c)(2). The statute authorizes a reduction when the original sentence was "based on" a sentencing range that has been lowered; the guideline authorizes one when the range "applicable" at the initial sentence has been lowered. Provisions enacted for the same purpose should be read *in pari materia*. *See,*

---

[6] One could characterize Rivera's pre-departure sentencing range as based – at least in part – on the crack guideline. As discussed above, under the terms of the career offender guideline, the offense level from the career offender table did not apply to Rivera because the offense level drawn from the pre-amendment crack guideline was higher. *See* U.S.S.G. § 4B1.1(b). Although this did not impact the pre-departure sentencing range for Rivera, it would for many other defendants if their convictions involved different quantities or they had received adjustments for acceptance of responsibility. Whether or not such sentences could be deemed to be "based on" the crack guideline, our holding in this case, as explained below, is based on the fact that the district court's calculation of Rivera's ultimate sentencing range and sentence would almost certainly have been different had the amended crack guideline been in effect.

10

*e.g.*, *United States v. Battista*, 575 F.3d 226, 234 (2d Cir. 2009).  We think that the range the initial sentence was "based on" within the meaning of the statute is also generally the range that was "applicable" within the meaning of the guideline.  *See Darton*, 595 F.3d at 1194.  Despite the difference in language between the statute and the guideline, we doubt there are many scenarios in which a defendant could qualify for a sentence reduction under one but not the other.

The question before us is this: What range was Rivera's sentence "based on" – that is, what was his "applicable" sentencing range for purposes of § 3582(c)(2) and § 1B1.10?  There are two candidates, as two ranges were implicated at his 1996 sentencing.  The first was supplied by the career offender guideline (at least in part), and it was 360 months to life in prison (Offense Level 38/CHC VI).  This was the "starting point" of the sentencing proceeding.  *Freeman*, 131 S. Ct. at 2692 (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)).  The second range was the one to which the judge departed based on Rivera's mental condition.  It was arrived at by subtracting three offense levels from the career offender computation but remaining in CHC VI.  The resulting range was 292–365 months (Offense Level 35/CHC VI), and the sentence imposed was at its low end, 292 months.

The stakes are high for Rivera. If he was sentenced "based on" the career offender range, he is not eligible for a sentence reduction.  This is because the retroactive amendment reduces Rivera's career offender *offense level* from 38 to 37,[7] but that has no effect on the resulting guidelines *range*; in CHC VI, Offense Levels 37 and 38 both result in ranges of 360 months to life.  U.S.S.G. Ch. 5, Pt. A.  Thus, Rivera could not satisfy the threshold requirement in both

---

[7] The difference results from the fact that under the amended guideline, the highest base offense level for crack offenses (Offense Level 38) now applies only where 4.5 kilograms or more of crack are involved in the offense.  Rivera's offense involved 3.3 kilograms, so his offense level under the amended guideline would be reduced from 38 to 36.  *See* U.S.S.G. § 2D1.1(c).  The career offender guideline would thus take over the offense level computation and prescribe an offense level of 37.  *See* § 4B1.1(b).

11

§ 3582(c)(2) and § 1B1.10 that a retroactive amendment has lowered the defendant's applicable range.

On the other hand, if Rivera's sentence was "based on" the range to which his sentencing judge departed, he is eligible for a sentencing reduction of up to 30 months. The same three-level departure from the revised career offender computation yields an Offense Level of 34 in Criminal History Category VI, with a corresponding range of 262–327 months. As mentioned, a reduction to the bottom of that range would shorten Rivera's prison term by two and one-half years.

We hold that Rivera's sentence was "based on" the range produced by subtracting three offense levels from the career offender computation. The resulting range was the one the sentencing judge found to be "applicable" to Rivera, and he chose a sentence at the low end of that range. That range is lowered when the retroactive amendment at issue is plugged into its calculation, even if everything else remains the same. Rivera is therefore eligible for a reduction.

The government contends that the range Rivera's sentence was based on was the career offender range, but the sentencing judge *rejected* that range in favor of the one on which he actually based Rivera's sentence. *See United States v. Cardosa*, 606 F.3d 16, 20 (1st Cir. 2010) ("[T]he government fails to explain why it makes sense to so read 'based on,' given that it is a less natural reading and inconsistent with the policy rationale for both the statute and amendments in this case."). To be sure, the career offender range was the starting point of Rivera's sentencing proceeding, but then the judging began, and because of Rivera's mental condition that range was deemed inapplicable. The sentence imposed was based explicitly on the post-departure range, which has since been lowered. *See Freeman*, 131 S. Ct. at 2695 (Sotomayor, J., concurring in the judgment) ("To ask whether a particular term of imprisonment

12

is 'based on' a Guidelines sentencing range is to ask whether that range serves as the basis or foundation for the term of imprisonment. . . . As a result, in applying § 3582(c)(2) a court must discern the foundation for the term of imprisonment imposed by the sentencing judge.").

Our reading of the plain wording of § 3582(c)(2) is further supported by *McGee*. In rejecting the government's argument that McGee's sentence was "based on" the *pre*-departure, career offender range, as we do again here, we observed that the meaning of the language in § 3582(c)(2) and § 1B1.10 is "inherently contextual." *McGee*, 553 F.3d at 229 (quoting *United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000)) (internal quotation marks omitted). It was clear from the sentencing transcript in *McGee* that the judge had not relied on the career offender range, and indeed "would likely have considered a different sentence from the one imposed" had the retroactive amendment been in effect at the time. *Id.* at 228. In those circumstances, we concluded that a holding that the (rejected) career offender range was the "applicable" range for the purposes of § 3582(c)(2) and § 1B1.10 would amount to "excessive formalism," and that therefore McGee was sentenced "based on" the post-departure range. *Id.* at 227–29.

The same is true with Rivera. As described above, the starting point for his sentence was a range of 360 months to life (Offense Level 38/CHC VI), but the judge determined that Rivera's mental condition warranted a three-level departure to Level 35. The judge then imposed a sentence at the bottom of the resulting 292–365 month range. If Rivera's sentencing range is computed in light of the retroactive amendment, the resulting offense level is 37, not 38. The same three-level departure from that level (again in CHC VI) produces a sentencing range of 262–327 months. Thus, there is ample reason to believe that Rivera would have received a sentence as low as 262 months – 30 months lower than the sentence imposed – had the offense guideline been amended before he was sentenced. In short, Rivera appears to have been

13

"disadvantaged by the 100-to-1 sentencing disparity that the crack amendments sought to correct," *McGee*, 553 F.3d at 230, in precisely the same way as McGee.

Our approach in *McGee* and in this case accords precisely with our obligation under § 3582(c)(2) and § 1B1.10 to

> isolate whatever marginal effect the since-rejected Guideline had on the defendant's sentence. Working backwards from this purpose, § 3582(c)(2) modification proceedings should be available to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence.

*Freeman*, 131 S. Ct. at 2692–93 (plurality opinion). The marginal effect of the rejected 100-to-1 ratio on Rivera's sentence is easily isolated. It produced a sentencing range with a low end that is 30 months higher than the exact same methodology would produce today. Accordingly, the district court should be permitted to revisit Rivera's sentence to the extent allowable under § 3582(c)(2) and § 1B1.10.[8]

Other factors influence our decision as well. One is the context in which we decide this case. Though our task is limited to construing the relevant statutory and Guidelines provisions, we are not required to perform it wearing blinders. Retroactive amendments exist to allow

---

[8] As was the case in *McGee*, our decision today is not in tension with *United States v. Williams*, 551 F.3d 182 (2d Cir. 2009), where we addressed the availability of relief under § 3582(c)(2) when the defendant benefitted from a "substantial assistance" motion under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 at the original sentencing. In *Williams* we found the defendant ineligible for a sentence modification on the ground that he was not sentenced "based on" a subsequently-lowered range, even though the sentencing judge had departed to a sentence within the range calculated under the later-amended crack guideline. *Id.* at 185–86.

*Williams* has no bearing here because it involved the special context of a departure from an otherwise applicable mandatory minimum sentence. The Guidelines specifically provide that when a mandatory minimum sentence exceeds the guideline range, "the statutorily required minimum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(b). That remains true even though a substantial assistance motion under 18 U.S.C. § 3553(e) has been filed and the mandatory minimum is no longer applicable. *Williams*, 551 F.3d at 185. Moreover, as we pointed out in *Williams*, our precedent has specifically limited sentencing judges considering departures from a mandatory minimum to but one factor: the nature and extent of the defendant's cooperation. *Id.* at 186 (citing *United States v. Richardson*, 521 F.3d 149, 159 (2d Cir. 2008)). In those circumstances, it cannot reasonably be said that either the pre-departure range or the post-departure sentence has been lowered by the retroactive amendment.

14

inequalities to be fixed, and the now-infamous 100-to-1 ratio was the source of shameful inequalities.  The Department of Justice itself characterized that ratio as unjustified, fundamentally unfair and racially discriminatory.[9]  And it bears emphasis that the 2007 adjustment to the offense guideline for crack offenders at issue in this case was billed by the Commission itself as but "a very small step" toward rectifying that very large injustice.  Hon. Ricardo H. Hinojosa, Chair, U.S. Sent'g Comm'n, Opening Remarks at the United States Sentencing Commission Public Hearing on Retroactivity (Nov. 13, 2007), *available at* http://or.fd.org/CrackRetroactivity%5CTranscript111307.pdf, at 9.[10]

We recognized in *McGee* our obligation, both generally and in this specific setting, to let lenity play a role in the construction of the Guidelines where there is doubt about their scope.  *McGee*, 553 F.3d at 228–29.  The same holds true when we construe statutes.  *See, e.g.*, *United States v. Kerley*, 544 F.3d 172, 178 (2d Cir. 2008) ("If Congress leaves a statute ambiguous . . ., 'the ambiguity should be resolved in favor of lenity.'" (citation omitted)).  As discussed above, we believe the plain language of § 3582(c)(2) and § 1B1.10 compel the conclusion that Rivera's sentence was based on the post-departure range his sentencing judge found applicable to his case – a range that has subsequently been lowered as a result of the Commission's 2007 amendment.

---

[9]     *See Restoring Fairness to Federal Sentencing: Addressing the Crack-Powder Disparity: Hearing Before the U.S. Sen. Comm. on the Judiciary, Subcomm. on Crime and Drugs* (Apr. 29, 2009) (statement of Lanny A. Breuer, Assistant Att'y Gen., Crim. Div., U.S. Dep't of Justice), *available at* http://judiciary.senate.gov/pdf/09-04-29BreuerTestimony.pdf, at 10–11.

[10]    A larger step was taken in June of this year, when the Commission voted to give retroactive effect to the amendments passed in response to the Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372.  That statute substantially increased the amounts of crack required to trigger mandatory minimum penalties, and the Commission's subsequent amendment of § 2D1.1 substantially reduced the sentences recommended by the Guidelines for crack offenders.  Unless Congress affirmatively disapproves the Commission's action, the retroactivity of this more recent lowering of crack sentences will become effective on November 1, 2011, and the Commission estimates that as many as 12,000 inmates will be eligible for a reduction under § 3582(c)(2).  *See* U.S. Sent'g Comm'n, News Release: U.S. Sentencing Commission Votes Unanimously To Apply Fair Sentencing Act of 2010 Amendment to the Federal Sentencing Guidelines Retroactively (June 30, 2011), *available at* http://www.ussc.gov/Legislative_and_Public_Affairs/Newsroom/Press_Releases/20110630_Press_Release.pdf, at 1.

But even if those provisions were ambiguous, the rule of lenity would prohibit the narrow construction the government urges upon us here.

In addition, as discussed above, all we decide here is the *eligibility* of Rivera for a sentence reduction under § 3582(c)(2), not his entitlement to one. *See Freeman*, 131 S. Ct. at 2694. The latter question is left to the sound discretion of the district court. If there are good reasons why Rivera's sentence should not be reduced notwithstanding the influence the now-discredited 100-to-1 ratio had on it, the district court is free to consider those reasons in determining whether to reduce the sentence.

A contrary holding could produce anomalous and unfair results. The government concedes, as it must in light of *McGee*, that a career offender convicted of a crack offense is sometimes eligible under § 3582(c)(2) for a reduction if the sentencing judge departed from the otherwise-applicable range. Yet it seeks a rule limiting that eligibility to cases in which the sentencing judge explicitly stated that he or she was departing to the range established by the offense guideline. This case highlights the potential unfairness of such a limitation. Rivera's career offender range was 360 months to life (Level 38/CHC VI). His range under the offense guideline was 324–405 months (Level 38/CHC IV). His range after the district court's departure was 292–365 months (Level 35/CHC VI). Thus, the sentencing judge in this case departed to a sentence *below* the range computed under the offense guideline. He might indeed have believed, as did the sentencing judge in *McGee*, that the range produced by the career offender guideline overrepresented the seriousness of Rivera's criminal history, *see* U.S.S.G. § 4A1.3, and that therefore a sentence within the range produced by the offense guideline (324–405 months) was fairer. Had the judge imposed such a sentence and used that reasoning, the government agrees Rivera would be eligible for a sentence reduction. But if Rivera's sentencing judge harbored that

16

belief, he had no reason to express it, as Rivera's mental condition warranted an even greater departure under § 5H1.3. Put another way, if the judge had had the foresight to depart in stages – first under § 4A1.3 to the range provided by the offense guideline and then a second departure under § 5H1.3 to 292 months based on Rivera's mental condition – the government would agree that Rivera is eligible for a sentence reduction under *McGee*. But the judge's failure to anticipate that fifteen years later we would be parsing his sentencing methodology in this manner, in the government's view, should categorically deprive Rivera of the minor and long-overdue relief the 2007 amendment was intended to provide. We decline to adopt this crabbed approach. "There is no reason to deny § 3582(c)(2) relief to defendants who linger in prison pursuant to sentences that would not have been imposed but for a since-rejected, excessive range." *Freeman*, 131 S. Ct. at 2690.

Instead, we hold as follows: Where the sentencing judge departs from a range computed under the career offender guideline to a lower range, the sentence imposed was "based on" the latter range for purposes of § 3582(c)(2), and for the purposes of § 1B1.10 that range is the "guideline range applicable" to the defendant. If a subsequently-lowered guideline "was a relevant part of the analytic framework the judge used to determine the sentence," *Freeman*, 131 S. Ct. at 2693, the relevant statutory and Guidelines provision require that a § 3582(c)(2) proceeding be available to allow the sentencing court the opportunity to remedy an injustice.

D.     *The Approach of Our Sister Circuits*

*McGee* (and by extension our decision here) is in conflict with the decisions of several other circuits. For example, in *Darton*, the Tenth Circuit faced the same situation we faced in *McGee* – a request for a sentence reduction by a career offender who had received a criminal history departure under § 4A1.3 to a sentence within the range produced by the offense

17

guideline. *Darton*, 595 F.3d at 1193. The defendant argued that the initial sentence was "based on" the post-departure range, which was the "applicable" range under § 1B1.10, but his argument was rejected by the Tenth Circuit. The court's reasoning was driven by the Guidelines Manual's definition of the term "departure." By specifically defining a departure as "a sentence outside the applicable guideline range," the court reasoned, the Guidelines make clear that "a departure only exists *apart from* the applicable guideline range; there is no such thing as a departure *to* the applicable range." *Id.* at 1194 (citing definitions of "departure" in the commentary to §§ 1B1.1, 4A1.3 and 5K2.0). Thus, it concluded that "the guideline range to which a court departs cannot constitute the 'applicable guideline range' or, in other words, the range upon which the sentence is 'based' for purposes of a sentence reduction under § 3582(c)." *Id.*

*Darton* relied in part on the Eighth Circuit's decision in *Tolliver*, which reached a similar result in a different (and unusual) setting. In *Tolliver*, the parties engaged in plea bargaining based on the assumption that the crack guideline would yield a range of 188–235 months. *Tolliver*, 570 F.3d at 1064. However, the probation officer determined that the career offender guideline applied, the court agreed, and Tolliver was sentenced to a 262-month term. *Id.* Later, Tolliver and the government stipulated to a grant of § 2255 relief on the condition that Tolliver would then be sentenced to a 188-month term. *Id.* That sentence was imposed, and after the 2007 amendment to the crack sentences, Tolliver sought a reduction under § 3582(c)(2) and § 1B1.10. *Id.* In finding him ineligible, the Eighth Circuit relied not only on the Guidelines' definition of the term "departure," but also on the application instructions for the Guidelines set forth in §1B1.1. *Id.* at 1065–66. Those instructions require a sentencing judge to take all the steps necessary to compute the guidelines range *before* deciding whether any departures are

warranted. "It follows," the court observed, "that . . . the application instructions will only permit a departure *from* the 'applicable guideline range,' and thus preclude a departure *to* the 'applicable guideline range.'" *Id.* at 1066 (emphases added). Therefore, it held, the career offender range was the defendant's "applicable" range, and since it had not been lowered by the 2007 amendment, Tolliver was ineligible for a sentence reduction. *Id.* at 1066–67.[11]

The Sixth Circuit reached the same result in *United States v. Pembrook*, 609 F.3d 381 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1599 (2011). In holding that a sentenced defendant who was indistinguishable from the defendant in *McGee* was *not* eligible for a sentence reduction, the court found its "most persuasive support" in the Guidelines' application instructions relied upon by the court in *Tolliver. Id.* at 385. Since the order of operations established by those instructions makes it clear that departures occur only *after* the applicable guidelines range has been computed, the court reasoned that "applicable" range for purposes of § 1B1.10 must be the *pre*-departure range. *Id.* Like the Eighth and Tenth Circuits in *Tolliver* and *Darton*, respectively, the Sixth Circuit also found support for its holding in the Guidelines' definition of the term "departure." *Id.*[12]

*Pembrook*, *Tolliver* and *Darton* are all based on the same flawed premise – that the applicable range for the purpose of a sentencing proceeding must necessarily be the same as the applicable range for the purpose of a subsequent sentence *modification*. We see no reason why that must be the case. We acknowledge a "natural presumption that identical words used in different parts of the same act are intended to have the same meaning," *Atlantic Cleaners &*

---

[11]     *Tolliver* was decided before the recent *Freeman* decision by the Supreme Court. Since the stipulation resolving Tolliver's § 2255 motion appears to have been the functional equivalent of a sentence bargain under Fed. R. Crim. P. 11(c)(1)(C), *Tolliver* appears to have been abrogated by *Freeman*.

[12]     *See also United States v. Caraballo*, 552 F.3d 6, 11 (1st Cir. 2008) (the initial sentence was "based on" the career offender range notwithstanding a sentence of 43 months below that range because the lower sentence was conferred "*after* the court ha[d] established an appropriately calculated guideline sentencing range").

19

*Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932), and we agree that the same presumption would generally apply to identical phrases used in different parts of the Guidelines Manual. "But the presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *Id.*; *see also Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87 (1934) ("[S]ince most words admit of different shades of meaning, susceptible of being expanded or abridged to conform to the sense in which they are used, the presumption readily yields to the controlling force of the circumstance that the words, though in the same act, are found in such dissimilar connections as to warrant the conclusion that they were employed in the different parts of the act with different intent.").

One circumstance in which the presumption is readily rebutted is "[w]here the subject matter to which the words refer is not the same in the several places where they are used," *Atlantic Cleaners & Dyers*, 286 U.S. at 433, and that is precisely the situation here. The subject matter of the phrase "applicable guideline range" in the definition of "departure" in the commentary to § 1B1.1 is the defendant's sentencing, at which time the applicable range is "the starting point and the initial benchmark" of the proceeding. *Gall*, 552 U.S. at 49. Because the Guidelines themselves contemplate departures from the applicable range (and *Booker* contemplates variances from it even where departures are unavailable), the starting point is not always the finishing point. Thus, it is true that when Rivera was sentenced, his applicable range was the career offender range of 360 months to life. From there, the sentencing judge departed based on his mental condition to a different range, 292–365 months.

The subject matter of the phrase "guideline range applicable to the defendant" in § 1B1.10 is not a sentencing proceeding but a modification proceeding that occurs after (in this case, more than 10 years after) sentence has been imposed. The question in that context is not what sentence is appropriate, but rather whether the sentence actually imposed should be reduced in light of an intervening retroactive amendment. In that setting, common sense suggests that in deciding whether "the guideline range applicable to the defendant has subsequently lowered," a court should focus on the range that was actually applied by the sentencing judge to the defendant, even if, as in this case, that range differs from the one that was the starting point of initial sentencing proceeding. Now that Rivera seeks a modification of his sentence, the 292–365 month range to which his sentencing judge departed is his applicable range. In concluding otherwise, we respectfully suggest that our sister circuits have "simply misemploy[ed] the 'presumption that identical words used in different parts of the same act are intended to have the same meaning.'" *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595 (2004) (quoting *Atlantic Cleaners & Dyers*, 286 U.S. at 433).

Our conclusion that the "applicable range" may have one meaning for sentencing purposes and another for purposes of a § 3582(c)(2) proceeding finds support in our rationale in *Martinez*. The defendant there sought a modification under § 3582(c)(2) and contended that his initial sentence was "based on" the offense guideline because the sentencing judge consulted that guideline in calculating his range as a career offender. We disagreed, holding that his applicable range for purposes of § 3582(c) was the end result of the overall guideline range calculus – *i.e.*, the career offender range, not the interim steps along the way. *Martinez*, 572 F.3d at 85. We explained that

> "the term 'sentencing range' clearly contemplates the *end result* of
> the overall guideline calculus, *not the series of tentative results*

21

> *reached at various interim steps in the performance of that calculus.*" . . . Therefore to determine which Guideline a defendant's sentence is "based on" we look only to the end result of the overall calculus . . . and not to the "interim" steps taken by the District Court.

*Id.* at 84 n.3 (quoting *United States v. Mateo,* 560 F.3d 152, 155 (3d Cir. 2009)) (emphasis added); *see also United States v. Caraballo*, 552 F.3d 6, 10 (1st Cir. 2008).

When Rivera was sentenced, the offense guideline and the career offender guideline were *both* interim steps in the sentencing calculus, the end result of which was the lower range to which the sentencing judge departed. Thus, the applicable range at Rivera's sentencing was the career offender range, but the applicable range for his 3582(c)(2) proceeding is the range on which the sentencing judge actually based his sentence.

Our approach is also consistent with the Supreme Court's emphasis in *Dillon* on the fact that a § 3582(c)(2) proceeding is not a resentencing. It is, rather, a limited revisiting of a previously-imposed sentence, during which the analytic framework of the sentence is replicated with one exception – the provision that has been retroactively amended is substituted for the corresponding provision applied at the time of sentencing. *See Dillon*, 130 S. Ct. at 2691 (citing § 1B1.10(b)(1)). By its very nature, then, the focus of the modification proceeding is on the final result of the sentencing proceeding, and the analysis that led to that result. Where the final result is the same as the initial applicable range, as in *Martinez*, the "applicable guideline" at both the sentencing and the subsequent modification proceeding are the same. But where, as here, the analytic framework of the sentence includes a determination that the defendant falls outside the heartland of the applicable range that was the starting point of the sentencing proceeding, the applicable range at the modification stage will be different.

22

We think *Pembrook*, *Tolliver* and *Darton* strain to avoid the commonsense conclusion that the "guideline range applicable to the defendant" within the meaning of § 1B1.10 is the range that was actually used in sentencing the defendant. In *Pembrook*, for example, the defendant was actually sentenced within the range produced by the drug offense guideline, which the district court used after departing under § 4A1.3 from the range prescribed by the career offender guideline. *Pembrook*, 609 F.3d at 383–84. But the Sixth Circuit nonetheless held that the "applicable" range was the career offender range the sentencing court had found *inapplicable* because it overrepresented the seriousness of the defendant's criminal past. *Id.* Though we disagree with the details of the court's analysis,[13] the more important point is the one we made in *McGee* and reiterate here: the combination of the rule of lenity and the fact that the crack amendments were adopted and made retroactive to ameliorate past sentences that were both fundamentally unfair and racially discriminatory counsels against the government's crabbed construction of § 3582(c)(2) and § 1B1.10.[14]

---

[13] The court in *Pembrook* found that § 1B1.10's limitation on the *degree* of a reduction under § 3582(c) supports the government's argument that the "guideline range applicable to the defendant" must refer to the pre-departure range. *Pembrook*, 609 F.3d at 384–85. Specifically, § 1B1.10 prohibits a reduction to a sentence below the amended range unless "the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing," in which case a comparable reduction from the amended range is authorized. That provision, *Pembrook* reasoned, "weighs in favor of interpreting the defendant's applicable range as his pre-departure guideline range." *Id.* at 385.

A simple hypothetical reveals the flaw in this reasoning. Assume the sentencing judge in *Pembrook*, after first departing to the range produced by § 2D1.1 on the ground that the career offender guideline overrepresented the seriousness of the defendant's criminal past, departed an additional six months because an unreasonable delay in prosecution deprived the defendant of an opportunity for a concurrent sentence. *See United States v. Los Santos*, 283 F.3d 422, 428 (2d Cir. 2002). In that event, the applicable guideline range for purposes of the § 3582(c)(2) proceeding would still be the post-departure range provided by § 2D1.1, and § 1B1.10 would operate to limit the authorized reduction to a point "comparably less" than the range produced by the retroactive amendment to § 2D1.1. § 1B1.10(b)(2)(B). In short, there is nothing in the text or structure of either § 3582(c)(2) or § 1B1.10 that precludes our conclusion here, *i.e.*, that the range the sentence was "based on" for purposes of § 3582(c) was the range it was in fact based on, and the range that was "applicable" for purposes of § 1B1.10 at that time was the range that was in fact applied.

[14] Though we are aligned with the Third and Fourth Circuits in our result, we do not fully agree with their reasoning. Specifically, the Fourth Circuit in *Munn* adopted the following approach: When a sentencing judge departs under § 4A1.3 from the career offender range to the drug offense guideline range, the post-departure range is the "applicable" range under § 1B1.10 for a reason unique to criminal history departures. The reason is the order of operations prescribed by the application instructions in § 1B1.1. Those instructions require the sentencing judge to

We are aware that other courts have found crack offenders ineligible for § 3582(c)(2) reductions in sentence despite the fact that they received Chapter Five-based departures from their career offender ranges, as Rivera did in this case. *See United States v. Wesson*, 583 F.3d 729, 730–32 (9th Cir. 2009) (despite departure grounded on diminished capacity, initial sentence "based on" career offender guideline), *cert. denied*, 130 S. Ct. 2071 (2010); *Caraballo*, 552 F.3d at 8, 11–12 (same; departure grounded on medical condition). While there are elements of those

---

"[d]etermine the defendant's criminal history category as specified in Part A of Chapter Four," § 1B1.1(a)(6), before determining the guidelines range from Chapter Five, § 1B1.1(a)(7). Since the authority to invoke criminal history departures is set forth in Part A of Chapter 4, *Munn* reasoned, such departures must therefore precede the determination of the applicable range: "[I]t would make little sense for a sentencing court to apply all of Chapter Four, except for an assessment of the applicability of an Overrepresentation Departure [*i.e.*, a criminal history departure under § 4A1.3, as in *McGee*], only to return to that issue after determining the defendant's applicable guideline range from Chapter Five." *Munn*, 595 F.3d at 192. As a result, "the Overrepresentation Departure . . . is a departure *to*, as opposed to a departure *from*, the applicable guideline range." *Id.* at 193; *see also Flemming*, 617 F.3d at 264–70 (describing as "plausible" the Fourth Circuit's interpretation of § 1B1.1 but finding the application instructions ambiguous as to whether a criminal history departure occurs before or after the applicable range is determined).

We note first that this reasoning, which implicitly distinguishes between Chapter Four-based criminal history departures and Chapter Five-based departures, such as the one in this case, would support a conclusion that Rivera is not eligible for a sentence reduction despite our decision in *McGee*. But we are wholly unpersuaded by it for two reasons.

First, the application instructions in § 1B1.1 simply tell judges to count up the criminal history points (Part A of Chapter Four) and then determine whether career offender or one of the other sentence-enhancing statuses is present (Part B). The fact that the authorization for the criminal history departure is located in Part A (§ 4A1.3) hardly requires the odd conclusion that a judge is supposed to decide whether to *depart* from the applicable criminal history category as part of his or her determination of what that category is.

Second, contrary to the reasoning of *Munn*, we see no anomaly in a judge "return[ing] to" the criminal history departure after determining the applicable guidelines range from Chapter Five. Chapters Two and Three of the Guidelines Manual provide numerous departure options that require judges to perform the same task. For example, § 2D1.1 recommends a departure where reverse sting operations distort the drug quantity. § 2D1.1 cmt. n.14. The fraud guideline recommends one where the loss quantity substantially overstates the seriousness of the offense conduct, § 2B1.1 cmt. n.19(C), or where frauds with non-monetary objectives cause reasonably foreseeable physical or psychological harms, § 2B1.1 cmt. n.19(A)(ii). Among the recommended Chapter Three departures is an upward departure where there is a vulnerable victim enhancement in the current case and the defendant's criminal history includes a crime that involved a vulnerable victim. § 3A1.1 cmt. n.4. No one could argue that these and the various other departures sprinkled throughout Chapters Two and Three amount to departures *to*, rather than *from*, the applicable range, even though the same application instructions guideline require judges to apply Chapters Two and Three before determining the applicable range from Chapter Five. § 1B1.1(a)(2)–(3). Rather, just as is the case with criminal history departures under § 4A1.3, sentencing judges "return to" those departure grounds, if appropriate, after calculating the applicable range.

In sum, our conclusion that post-departure ranges are the ones that count in a § 3582(c)(2) proceeding is not grounded in the Guidelines' application instructions or definitions of the term "departure," issues that have received extensive attention from our sister circuits on both sides of the circuit split. It based on our conclusion that the sentencing range a defendant's initial sentence was "based on" is, quite simply, the range that was used by his or her sentencing judge in imposing sentence. Nothing in § 3582(c)(2), § 1B1.10 or elsewhere in the Guidelines Manual precludes that result.

courts' analyses that conflict with our analysis here, a critical distinction eliminates the need for extended discussion of them. Specifically, there was no indication in either case that the retroactive amendment would alter the outcome of the career offender guideline computation, as it does for Rivera (by lowering his offense level from 38 to 37). Thus, even if those defendants' sentences were found to be "based on" the *post*-departure range in their cases, it could not be said that that range was lowered by the 2007 amendment. The case before us involves a defendant whose career offender computation is indeed altered by the amendment in question, as well as a sentencing methodology that strongly suggests the alteration would have made a difference to the sentencing judge. We need not address here situations in which one of those factors is missing.

Finally, we acknowledge the Sentencing Commission's proposed amendment to § 1B1.10, *see* U.S. Sentencing Comm'n, 76 Fed. Reg. 41332 (proposed July 13, 2011). Absent congressional disapproval, that amendment will become effective on November 1, 2011, and it will dramatically alter the landscape for sentenced prisoners who seek to benefit from this year's retroactive reduction of crack sentences. Among other effects, the proposed amendment will preclude sentence modifications in situations like the one in *McGee*,[15] where we found them permissible, and at least arguably permit them in situations like the one in *Williams*, *see supra* n.8,[16] where we found them to be precluded. Indeed, because the amendment will prescribe the

---

[15]    U.S. Sentencing Comm'n, 76 Fed. Reg. at 41332 (amending commentary to § 1B1.10 to define "applicable guideline range" at initial sentencing as the range determined "before consideration of any departure provision in the Guidelines Manual").

[16]    *Id.* (amending § 1B1.10 to authorize sentence modification where defendant received substantial assistance motion and permitting comparable departure from subsequently-lowered range). We held in *Williams* that a defendant who received a downward departure pursuant to substantial assistance motions pursuant to both U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) was ineligible for a modification because the mandatory minimum of 240 months applied as his guidelines range (despite the motions), and thus his sentence was not "based on" a guidelines range that had been subsequently lowered by the Commission. 551 F.3d at 185–86. In the "Reason for Amendment" discussion that accompanies the July amendment, the Commission evidences an intention that

25

precise construction of "applicable guideline range" that we refuse to give the existing guideline, *i.e.*, it is the pre-departure range from the initial sentencing, the proposed amendment would render Rivera himself ineligible for a sentence reduction if it were applied to his case. However, because the amendments to § 1B1.10, which abrogate the law of this and certain other circuits, are substantive, rather than merely clarifying, *see United States v. Sabbeth*, 277 F.3d 94, 99 (2d Cir. 2002), they cannot fairly be applied retroactively to Rivera's § 3582(c)(2) proceeding on remand.

## CONCLUSION

A remand for the purpose of allowing the district court to exercise the broad discretion afforded by § 3582(c)(2) is consistent with our approach to related sentencing situations. After *Booker*, we faced the question of how to deal on direct review with sentences imposed before

---

defendants like the one in *Williams* receive a break in the context of their § 3582(c)(2) proceedings comparable to their downward departure for substantial assistance:

> [T]he Commission has determined that, in a case in which the term of imprisonment was below the guideline range pursuant to a government motion to reflect the defendant's substantial assistance to authorities (*e.g.*, under 5K1.1), a reduction comparably less than the amended guideline range may be appropriate. Section 5K1.1 implements the directive to the Commission in its organic statute to "assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed . . . to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." *See* 28 U.S.C. 994(n). *For other provisions authorizing such a government motion, see 18 U.S.C. 3553(e)* (authorizing the court, upon government motion, to impose a sentence below a statutory minimum to reflect a defendant's substantial assistance); Fed. R. Crim. P. 35(b) (authorizing the court, upon government motion, to reduce a sentence to reflect a defendant's substantial assistance). The guidelines and the relevant statutes have long recognized that defendants who provide substantial assistance are differently situated than other defendants and should be considered for a sentence below a guideline *or statutory minimum* even when defendants who are otherwise similar (but did not provide substantial assistance) are subject to a guideline or statutory minimum. *Applying this principle when the guideline range has been reduced and made available for retroactive application under section 3582(c)(2) appropriately maintains this distinction and furthers the purposes of sentencing.*

U.S. Sentencing Comm'n, 76 Fed. Reg. at 41334 (emphases added).

26

that decision by judges who were under the erroneous impression that the Guidelines were mandatory. Our resolution of the plain error and harmless error issues in such cases was to remand them to the district courts "for determination of *whether* to resentence," firm in the belief that "an appellate court will normally be unable to assess the significance of any error that might have been made." *United States v. Crosby*, 397 F.3d 103, 117 (2d Cir. 2005). When the Supreme Court in *Kimbrough v. United States*, 552 U.S. 85 (2007), made it clear that we had been erroneously inhibiting sentencing judges from deviating from the 100-to-1 ratio, we faced a similar plain error issue. Once again, acknowledging "the broad deference that this Circuit has afforded the sentencing discretion of the district courts," we elected to remand all such cases to give the district courts an opportunity to determine whether, in light of subsequent changes in the law, they would have imposed different sentences. *United States v. Regalado*, 518 F.3d 143, 147, 149 (2d Cir. 2008). Our holding today brings that same approach to an analogous setting. The Commission determined that sentences imposed under the onerous crack guideline should be reexamined. The benefit of that long-overdue measure must not be limited to "arbitrary subset[s]" of defendants whose sentences appear to have been influenced by the pre-amendment guideline. *Freeman*, 131 S. Ct. at 2695. The best way to remedy the "systematic injustice" produced by the old guideline, *id.*, is to err on the side of empowering the district courts to revisit crack sentences, especially since (a) any actual sentence reduction is committed to the sound discretion of the district courts and (b) the extent of any such reduction has been carefully circumscribed by the Commission. These circumstances counsel in favor of a generous construction of § 3582(c)(2) and § 1B1.10, not the narrow ones adopted by some of our sister circuits.

The order denying Rivera's motion for a sentence reduction is reversed and the case is remanded for a determination of whether such a reduction is appropriate in his case.

KATZMANN, *Circuit Judge*, concurring:

I concur in the judgment that the Rivera is eligible for a sentencing reduction pursuant to 18 U.S.C. § 3582(c)(2) and the retroactive amendments to the crack cocaine sentencing guidelines. I also agree with much of the majority's reasoning. To begin with, I share the majority's view that we must understand the retroactive crack amendments as an effort by the U.S. Sentencing Commission to provide a "partial remedy for the urgent and compelling problem of crack-cocaine sentences." *Freeman v. United States*, 131 S. Ct. 2685, 2694 (2011) (plurality opinion) (internal quotation marks omitted). As a plurality of the Supreme Court cautioned in *Freeman*, there is no need to interpret § 3582(c)(2) in a way that "extend[s] the benefit of the Commission's judgment only to an arbitrary subset of defendants" or "den[ies] . . . relief to defendants who linger in prison pursuant to sentences that would not have been imposed but for a since-rejected, excessive range." *Id.* at 2690, 2694-95. And in light of this court's holding in *United States v. McGee*, 553 F.3d 225 (2d Cir. 2009) (per curiam), I think it is apparent that Rivera's original sentence, which as a practical matter was clearly premised on the then-applicable crack cocaine guidelines, was "based on" a sentencing range that the Sentencing Commission subsequently lowered.

As the majority makes clear, in order for Rivera to be eligible for a sentence reduction under § 3582(c)(2), it is not sufficient that he was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission"; the statute requires also that the sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Martinez*, 572 F.3d 82, 84 (2d Cir. 2009) (per curiam) (quoting 18 U.S.C. § 3582(c)(2)) (internal quotation marks omitted). The policy statement relevant here renders ineligible defendants for whom the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B).

The majority reads these separate eligibility requirements — that the defendant have been sentenced "based on" a subsequently lowered range, and that the amendment have an effect of lowering the defendant's "applicable guideline range" — as essentially one and the same. As the majority acknowledges, other circuits do not treat these requirements as equivalent. The Third Circuit, for example, has concluded that the "based on" requirement and the policy statement's language are "complementary" and that the policy statement is "narrower." *United States v. Doe*, 564 F.3d 305, 310-11 (3d Cir. 2009). And in considering this question, regardless of how they resolve it, several of our sister circuits have derived guidance from the Commission's general instructions on how the apply the Guidelines, *see* U.S.S.G. § 1B1.1, which suggest that the defendant's "guideline range" is fixed prior to a sentencing court's consideration of departures under Chapter Five of the Guidelines Manual. Based on the order for sentencing determinations set forth in these instructions, these courts have concluded that Chapter Five departures have no effect on a defendant's "applicable guideline range" for sentence reduction purposes. *See, e.g.*, *United States v. Guyton*, 636 F.3d 316, 319-20 (7th Cir. 2011); *United States v. Flemming*, 617 F.3d 252, 262-64 (3d Cir. 2010); *United States v. Pembrook*, 609 F.3d 381, 384-85 (6th Cir. 2010); *United States v. Darton*, 595 F.3d 1191, 1196-97 (10th Cir. 2010); *United States v. Tolliver*, 570 F.3d 1062, 1065-66 (8th Cir. 2009). Under that reading, Rivera would not be entitled to relief.

Unlike the majority, which concludes that the meaning of § 3582(c)(2) and § 1B1.10 is straightforward, I find the relationship between the statutory "based on" requirement and Commission's policy statement to present a close and difficult question. On the one hand, the majority's reading, by interpreting the policy statement in a way that would "permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a

2

relevant part of the analytic framework the judge used to determine the sentence," *Freeman*, 131 S. Ct. at 2692-93 (plurality opinion), has the virtue of eschewing arbitrary and formalistic distinctions among classes of defendants whose sentences were as a practical matter "based on" the subsequently reduced crack guidelines.

On the other hand, Congress has plainly granted the Commission, through its policy statements, the authority to "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u); *see also Dillon v. United States*, 130 S. Ct. 2683, 2691 (2010). The Commission, in turn, has linked eligibility for a sentence reduction to the concept of an "applicable guideline range." It is therefore understandable that some of our sister circuits have closely parsed the Guidelines and the various usages of similar terms therein to ascertain the meaning of this concept. And to extent that these courts have concluded that the Commission never intended a defendant's "applicable guideline range" to take account of Chapter Five departures, that conclusion appears to have been borne out by the Commission's recent promulgation of a proposed amendment that, once effective, would make explicit that the "applicable guideline range" referred to in § 1B1.10 is the guideline range determined before the consideration of *any* departure or variance. *See* U.S. Sentencing Comm'n, 76 Fed. Reg. 41332, 41334 (July 13, 2011).[*]

The panel in *McGee* faced a similar interpretive conundrum. There, like here, the government argued that the policy statement "treats the applicable guideline range as the

---

[*] Absent congressional disapproval, the proposed amendment would take effect on November 1, 2011. Because by the terms of the proposed amendment, courts are to use the version of § 1B1.10 that is in effect on the date of the sentence reduction proceeding, the Commission's clarification of the term "applicable guideline range" is of no consequence to Rivera's eligibility.

3

pre-departure range . . . [,] which . . . courts have held is unaffected by [the crack amendment]." 553 F.3d at 228.  The *McGee* panel conceded that the government's contentions in this regard were "not without force."  Nonetheless, "given that the policy statement is subject to different interpretations and taking account of case law as well as the purposes of the crack amendments," the panel concluded that the defendant there was eligible for a reduction.  *Id.*  Perceiving an ambiguity as to what the Sentencing Commission intended, the panel applied the rule of lenity in McGee's favor.  *Id.* at 229-30.

As I read *McGee*, we are compelled to hold that the version of the policy statement applicable at times relevant to Rivera's sentencing was ambiguous.  To my mind, the ambiguity described in *McGee* does not disappear merely because Rivera's departure falls under Chapter Five of the Guidelines Manual and was based on his diminished mental condition, whereas the departure in *McGee* arose from a Chapter Four provision and involved the overrepresentation of McGee's criminal history.  In declining to adopt a reading of the policy statement that "would lend itself to excessive formalism," *id.* at 228, *McGee* did not suggest that the particular chapter in which the Guidelines provision authorizing the pertinent departure appears should make any difference.

The rule of lenity, which applies to our interpretation of the Guidelines, requires ambiguities like the one at issue here to be resolved in the defendant's favor.  *See United States v. Simpson*, 319 F.3d 81, 86 (2d Cir. 2002).  I therefore join the majority's conclusion that Rivera's "applicable guideline range" was his post-departure range and that he is accordingly eligible for a sentence reduction.

For these reasons, I concur in the judgment, and I join the majority's cogent and scholarly opinion to the extent that it is not inconsistent with the views that I have stated above.

4